(Decided March 13th, 1866.)

JAMES W. W. TAYLOR *vs.* WILLIAM H. HEBDEN.

APPOINTMENT AND REMOVAL OF OFFICERS : CONSTITUTIONAL LAW : JUSTICES OF THE PEACE.—By the Constitution of 1864, Art. 2, Sec. 16, it is provided that "All civil officers appointed by the Governor and Senate shall be nominated to the Senate within fifty days from the commencement of each *regular session* of the General Assembly ; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless sooner removed from office) and until their successors respectively qualify according to law." By Art. 12, Sec. 6, it is provided that " All officers, civil and military, now holding office, whether by election or appointment, under the State, shall continue to hold and exercise their offices according to their present tenure unless otherwise provided in this Constitution, *until they shall be superseded according to its provisions,* and until their successors be duly qualified." By Art. 6, Sec. 47, the term of office of Justice

Taylor *vs.* Hebden.

of the Peace was changed from an election by the people, to appointment by the Governor, by and with the advice and consent of the Senate. HELD : That Justices of the Peace who were elected in November, 1863, and in office when the Constitution of 1864 was adopted, continue to hold their offices until there shall be regular appointments by the Governor and Senate superseding them ; and that the concurrent act of the Senate could only be had at a *regular* and not a *special* session of the Legislature.

APPEAL from the Superior Court of Baltimore City.

The facts of this case are stated in the opinion of the Court.

This cause was argued before BARTOL, GOLDSBOROUGH, and WEISEL, J.

*A. Randall, Attorney General,* for the appellant.

The appellant, Taylor, insists, that he was legally appointed to and held the office of Justice of the Peace, and that this decree ought, therefore, to be reversed, and the petition dismissed with costs, for the following reasons :

1st. Because Hebden being elected under the 19th section of the 4th Article of the late (1851) Constitution for two years from his election in November, 1863, his term of office would have expired on the second Wednesday of November, 1865, and the present Constitution, (which went into operation afterwards in November, 1864,) declaring by its 6th sec. of the 12th Article, that all officers then holding office shall continue to hold according to their present tenure, unless otherwise provided in this Constitution, &c., merely confirming this term of office to him till this second Wednesday of November last, and until his successor be duly qualified, his (Hebden's) office expired on that day by its own limitation.

2nd. That Hebden's term of office thus expiring on the second Wednesday of November, 1865, created a vacancy in the office of Justice of the Peace during the recess of the

Senate, to which the Governor, who has the power to fill the same, did accordingly appoint Taylor, a suitable person, whose commission was to continue in force till the end of the next session of the ' General Assembly, &c., and whose nomination was made to the Senate within thirty days after the next meeting of the General Assembly, under the 14th section of the second Article of the present Constitution. See latter part of the 19th sec. of the 4th Art. of the late Constitution (1851,) and 47th and 48th sections of the 4th Art. of the present Constitution, and the Acts of 1862, ch. 68, and 1865, ch. 41.

3rd. The 16th section of the 2nd Article of the present Constitution does not apply to Hebden, nor prolong his term of office to the first Monday in May, as he contends, because he is not, in the language of this section, " an officer appointed by the Governor and Senate," but an officer elected by the people. This section applies exclusively to officers thereafter to be appointed, and not to such as, like Hebden, the Constitution finds in office, and to future appointments, to be nominated to the Senate within fifty days from the commencement of each regular session of the General Assembly.

4th. If there be not a vacancy in this office which the Governor had authority to fill under the 14th section of the 2nd Article of the present Constitution, then this appointment of a successor to Hebden is a case not otherwise provided for in the Constitution, and to which, under the 13th section of the 2nd Article of the Constitution, the Governor has the power to make a nomination, and by and with the advice and consent of the Senate appoint.

*Wm. Price*, for the appellee.

Wm. H. Hebden was elected twice a Justice of the Peace for the second ward of the city of Baltimore; once in November, 1861, and again in November, 1863. There is

no question about his election, and it is only necessary to say, that he was in office when the new Constitution went into effect on the 1st day of November, 1864. The term for which he was elected, being for two years, from the second Wednesday of November, 1863, would expire on the second Wednesday of November, 1865.

The adoption of the new Constitution on the 1st of November, 1864, superseded the old on that day; and the appellee after that day held his office, and exercised its duties under the new Constitution; we must look to the new Constitution, to see what disposition is made of him and his office.

We turn then to the 6th section of the 12th Article of the new Constitution, where it is plainly declared, that "All officers, civil and military, now holding office, whether by election or appointment under the State, shall continue to hold and exercise their offices, according to their present tenure, unless otherwise provided in this Constitution, until they shall be superseded pursuant to its provisions, and until their successors be duly qualified." Under this section Hebden was entitled to hold and exercise his office, until the 2nd Wednesday of November, 1865; unless his case was otherwise provided for under the new Constitution, and until his successor was duly qualified.

We are now to ascertain how Justices of the Peace are appointed, and at what time they take possession of their offices under the new Constitution; for, until his successor is so appointed, Hebden holds his office.

The appointment of Justice of the Peace is provided for by the 47th section of the 4th Article of the new Constitution. Which declares, that they shall be appointed for the whole State by the Governor, by and with the advice and consent of the Senate. The terms and manner of the appointment are settled by the 16th section of Article 2, which provides, that "All civil officers appointed by the Governor

Taylor *vs.* Hebden.

and Senate, shall be nominated to the Senate within fifty days after the commencement of each regular session of the General Assembly, and their term of office shall commence on the first Monday of May following.''

This review of the Constitution settles the right in favor of Hebden, unless his case is otherwise provided for, as declared by the 6th section of the 12th Article already referred to. Now to show that it is otherwise provided for, we are referred to the 14th section of Article 2, which provides, that in case of a vacancy, during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the General Assembly, or until some other person is appointed to said office, which ever shall first occur; and the nomination of the person thus appointed during the recess, or of some other person in his place, shall be made to the Senate within thirty days after the next meeting of the General Assembly.

The whole question then resolves itself into this: was there a vacancy in the office of Hebden, when Taylor was appointed to his office?

It is impossible, as it appears to me, to look at the 14th section of Article 2, and say, that it can bear such a construction. The vacancy there spoken of, is one occurring in the recess of the Senate, by death, resignation, removal from office, change of residence, or the like. It provides for the accident of a vacancy. But there was no such accident in the case of Hebden.

He was in office under all the sanctions of the Constitution; was entitled to hold and exercise his office up to the day when his successor was appointed and qualified.

His case is strictly within the terms of the 16th section of Article 2. His successor could only be appointed at a regular session of the General Assembly, and, as such successor

could only take possession of his office on the first Monday of May succeeding, it follows, that Hebden's successor can be appointed at the regular session of the General Assembly, commencing in January, 1867, and can then only enter upon the duties of his office on the first Monday of May, 1867. Hebden will therefore continue in office until that time.

WEISEL, J., delivered the opinion of this Court.

This cause has been heard in obedience to a resolution of the General Assembly, passed at its recent special session. Doubts having been seriously entertained as to the legality of the appointments of Justices of the Peace in November last, by the late Governor, his Excellency, Governor Swann was requested and authorized to have a cause instituted and tried, and brought on appeal to this Court for an early determination.

The record shows that the appellant in this case received the appointment of Justice of the Peace for the second ward of Baltimore City, from Governor Bradford, in December last; that he took the oath of office soon after, and entered upon the discharge of its duties and superseded the appellee in said office; that the appellee was elected to said office in November, 1863, by the voters of said ward, under the Constitution of 1851, and was in office when the present Constitution went into effect, and continued therein until that appointment, when, supposing that his term of office had expired, and that he was validly superseded in it, he retired from it and permitted the appellant to occupy it. Being afterwards advised that Taylor's appointment was not authorized by the Constitution, he applied to the Superior Court of Baltimore City for, and obtained the writ of *mandamus* to be restored to the office. The answer of the appellant admitted the election of the appellee as stated

and his own appointment to said office, and his occupancy of it, and insisted upon its constitutional validity. A *pro forma* order was passed by his Honor, JUDGE MARTIN, granting the writ requiring the appellant, Taylor, to vacate the office, and restoring Hebden, the appellee, to it. From this order the present appeal was taken.

By the Constitution of 1851, Justices of the Peace were elected by the qualified voters of the State, and held their offices for two years from the time of their election, and until their successors in office were elected and qualified. Art. 4, sec. 19. The appellee in this case was elected a Justice of the Peace, in the second ward of Baltimore City, in November, 1863, and for the term above specified.

Whilst thus in office, the people of the State in Convention assembled, framed and adopted a new Constitution, which went into effect on the first day of November, 1864. By it the tenure of office of Justices of the Peace was changed from an election by the people, to appointment by the Governor, by and with the advice and consent of the Senate, the term of office to be two years. Art. 6, sec. 47. And by Art. 2, sec. 16, it is provided that "all civil officers appointed by the Governor and Senate, shall be nominated to the Senate within fifty days from the commencement of each *regular* session of the General Assembly ; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless sooner removed from office,) and until their successors respectively qualify according to law."

These provisions regulate the original appointment of Justices of the Peace, (as distinguished from the filling of vacancies), and fix the time of the commencement and termination of their office. The *regular* sessions of the General Assembly are biennial ; the appointments of Justices

of the Peace are to be made at *each regular session ;* and their term of office shall commence on the first Monday of May next ensuing their appointment. No other time is fixed for this purpose in the Constitution. This mode allows a full session for the appointments to be made, and reasonable time for issuing their commissions and for their qualification for office. By it order and regularity are observed, and after the first appointments under the Constitution shall have been made, the machinery of government in this branch of the public service will move on without interruption. Such is the obvious design of the Constitution in this respect.

But at the time the Constitution of 1864 was adopted and went into effect, all the public offices of the State were filled. Justices of the Peace held office throughout the State by elections of the preceding year, when, they had been chosen for two years from that time, and until their successors in office were elected and qualified. What provision did the Constitution make as to them ? It was competent for the Convention to terminate their office with the old Constitution which it superseded, or to have diminished or extended their existing term according to the public requirements or necessities. With regard to the Judges then in office, for example, the Constitution provided that they should continue to act as Judges of their respective Courts, *until the expiration of the term for which they were respectively elected,* and until their successors should be elected and qualified. (Art. 4, sec. 27.) But with regard to *Justices of the Peace then in office,* no such special provision was made, but a general section was inserted, which embraced them, and provided for the continuance and termination of their existing offices. This is sec. 6 of Art. 12, which is in these words : "All officers, civil and military, now holding office, whether by *election* or appointment under the State, shall continue to hold and exercise their

14      v. 24.

offices, according to their *present tenure*, unless otherwise provided in this Constitution, *until they shall be superseded pursuant to its provisions*, and until their successors be duly qualified.''

In virtue of this section Justices of the Peace then in office by election, continue to hold their offices according to their then tenure, *until superseded pursuant to the provisions of the Constitution*. In what mode are they to be superseded? Plainly by the concurrent action of the Governor and Senate, according to the 47th sec. of Art. 4, and the 16th sec. of Art. 2. Whether that could have been done at the first regular session of the Legislature which immediately succeeded the adoption of the Constitution, to wit, in January, 1865, it is needless now to inquire. No nominations for appointments of this class were made at that time, and of course the concurrent action required did not take place, nor has any since taken place in conformity with the requirement of the Constitution, as no *regular* session of the General Assembly has since been held, nor can any constitutionally be held before January, 1867. The Justices of the Peace, therefore, who were elected in November, 1863, and in office when the present Constitution was adopted, continue to hold their offices until there shall be regular appointments by the Governor and Senate, superseding them, which cannot be before the next regular meeting of the Legislature, in January, 1867, and to the first Monday of May thereafter.

Such would be our interpretation of the Constitution, in relation to these officers, if we had nothing but the language of that instrument to guide us. But we have an express adjudication by this Court upon the meaning and effect of the clause ''until superseded pursuant to the Constitution,'' in the case of *Watkins vs. Watkins, in 2d Md. Rep.,* 355. In the Constitution of 1851, there was a similar provision with regard to all officers, civil and military,

holding commissions under the State, when it went into operation. (Art. 10, sec. 8.) The Adjutant General of the State, under the Constitution which existed prior to that of 1851, held his office during good behavior. The Constitution of 1851 changed the term of office to six years, and gave the power of appointment to the Governor and Senate, as before. The Governor did nominate a successor to the Senate, but that body declined either to confirm or reject, on the ground that the incumbent held by his former tenure, and the Constitution made no provision for fixing the time of the appointment of his successor, and that this was not in the discretion of the Executive. After the adjournment of the Legislature the Governor appointed a successor, regarding the office as vacant, and that he had the power to fill it. The incumbent refused to surrender the papers, &c., of his office, upon which the appointee filed his petition for a *mandamus*, requiring him to make the delivery. In that case on appeal, LE GRAND, Chief Justice, pronouncing the opinion, decided that the incumbent under the old Constitution held under his commission until he was superseded by the concurrent action of the Governor and Senate, and inasmuch as that had not taken place the office was not vacant, and the new appointment was unauthorized and void. The following extract from the opinion in that case will apply to this, and sustain our construction of the clause we have referred to.

"The appellee," (said the Court, after reciting the sections of the Constitution relating to the appointment in that case,) "at the adoption of the Constitution, held a military commission under the State, and by force of the section last quoted, he was to continue to hold it until he should be superseded, *pursuant to the provisions of the Constitution*, and his successor should be duly qualified. The question then is, how could the appellee be superseded *pursuant to the provisions of the Constitution?* The question

is answered by the second section of the 9th article, which provides, that the Adjutant General shall be appointed by the Governor, by and with the advice and consent of the Senate. It requires a concurrence of action on the part of the executive and Senate, and in our judgment, until this takes place the incumbent under the old Constitution holds under his commission. It is clear to our minds that it was the intention of the framer of the Constitution, to abolish the life tenure   *   *   and in the case of the Adjutant General, to limit his term of service to the period of six years. But it is equally plain to our minds, that the person who held the office when the new Constitution went into operation continues to hold it until such time as he be superseded by the concurrent action of the Governor and Senate, or shall resign, or shall be removed by death, or in pursuance of a court martial, as is provided in the 15th section of the 2nd article of the Constitution.   *   * Our opinion is, that until the Governor and Senate concurred in the appointment of an Adjutant General, the appellee held under his commission, and as no such concurrence has been had, he still continues to do so."

The appellant in his answer to the petition for the writ, alleged that the office of the appellee had become *vacant*, and that he was appointed to it by the Executive rightfully. The same ground was taken and endeavored to be maintained by the learned Attorney General of the State, who supported his claim to the office, in his brief and in his argument before this Court, and section 48 of Article 4, and section 14 of Article 2, which regulate the filling of vacancies were relied upon. But we can only say, as this Court said in the case of *Watkins vs. Watkins*, that those sections only authorize the Governor to fill vacancies, and if no vacancy occurred in the office held by the appellee, those sections do not apply to it. No vacancy took place by death, resignation or removal of the incumbent, or any

other cause which would constitutionally vacate the office, and until such occurred, the appellee continued in office under his former tenure and until superseded in the way mentioned, at a *regular* session of the Legislature, and by the concurrent act of the Governor and Senate.

The Governor alone has the power of filling a *vacancy* in the office of a *Justice of the Peace* under section 48, Article 4, as decided by this Court in the case of *Cantwell vs. Owens*, 14 *Md. Rep.*, 215, (the provisions in the two Constitutions of 1851 and 1864, being the same on this subject,) but that would be *for the residue of the term.* In this case the incumbent was still the occupant of a term, subsisting by virtue of the 6th section of Article 12.

A special or extraordinary session of the Legislature has recently been held, but the record does not show what took place at it in relation to this appointment. In the brief of the Attorney General it is stated that his nomination was made to the Senate within thirty days after the meeting of the body. But we think that even if the nomination of the appellee had been submitted to and confirmed by the Senate at this extra session, this action, though concurrent, would not have rendered the appointment valid, as an original appointment, inasmuch as that session was not a *regular* session of the General Assembly, and the incumbent could not be superseded in his office at that time. We have already said there was no *vacancy* in the office. In either aspect then, a nomination to and confirmation by the Senate, at the extra session, of the appellee would have been nugatory acts.

We are therefore of the opinion that the appointment of the appellant to the office of Justice of the Peace for the second ward of Baltimore City by the late Governor, at the time and under the circumstances mentioned in this record, was not authorized by the Constitution, and that the appellee, William H. Hebden, was, and is the rightful

incumbent of said office, and that the order or decree of the learned Judge below, restoring him to it, should be affirmed.

*Order affirmed with costs to the appellee,*
*and cause remanded.*

(Decided March 14th, 1866.)

NOTE.—The reporter is requested to say, that Judges BARTOL and COCHRAN who did not sit at the hearing of this case, have examined the questions involved, and entirely concur in the foregoing opinion of the Court.