HORATIO C. MOUNT, RELATOR, v. WILLIAM HOWELL, RESPONDENT.

Argued November 6, 1913—Decided February 24, 1914.

1. Under the statute of 1905, page 75, providing that assessors shall hold office for three years and until their successors are appointed and qualify, and that in case of a vacancy the appointment shall be for the unexpired term only, if the appointing body fail to act at the end of a three years' term the incumbent continues to serve by the terms of the act, and no vacancy is created.
2. An act indicating by its title that it is to apply to "certain cities of this state" is not thereby rendered unconstitutional.
3. An act limited in its operation to cities having a population between fifteen thousand and thirty-five thousand is not unconstitutional if its provisions relate to the structure and machinery of government.
4. *Quo warranto* will lie in case of partial intrusion into and partial ouster of the relator from a public office.

On *quo warranto*. On demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the relator, *Theodore Strong.*

For the respondent, *George S. Silzer.*

The opinion of the court was delivered by

PARKER, J. The controversy is over the office of assessor, in the city of New Brunswick, and the pertinent statute is the act of 1905 (*Pamph. L., p.* 75; *Comp. Stat., p.* 5163, *pl.* 151, &c.), providing in substance that in cities of a population between fifteen thousand and thirty-five thousand the council may appoint three assessors to hold office for three years from January 1st next preceding the date of their appointment and until their successors are appointed and qualify; vacancies for any cause to be filled for the unexpired

term only; the city to be divided into three assessment districts and one of said assessors to be assigned by the council to each district. There are other provisions not relevant to this case.

The facts as set up in the information and plea and admitted by the demurrer are that in April, 1905, assessors were appointed under the above act for a term expiring January 1st, 1908; their successors were then appointed for a term expiring January 1st, 1911; that no new appointment was then made, and the old assessors continued to serve until January 8th, 1912, when the council declared a vacancy to exist and appointed relator, Mount, for a term of three years and assigned him to the first district; that he thereupon took the required oath and entered on his duties and continued to perform the same until January 1st, 1913, when council again declared a vacancy and appointed the respondent, Howell, for the "term prescribed by law, and that he on the same day took the oath and entered on the performance of his duties as assessor, and continues to perform the same."

Upon this state of facts we conclude that the relator is entitled to judgment of ouster. It is argued for respondent, first, that the appointment of Mount for a full term on January 8th, 1912, was entirely void because a year of the term had already elapsed and the appointment should have been for only the remaining two years. We think that, apart from other considerations, the appointment was at least good until January 1st, 1914; but it is unnecessary to decide this, because the statute in express terms provides that appointees serve not only for three years but until their successors are appointed and qualify; and the appointments for unexpired terms are only in cases of a vacancy. But there is no vacancy where the council fails to act at the end of a three years' term, for the assessors in office hold over by the express terms of the act until their successors are appointed and qualify. It follows, therefore, that the council in 1912 lawfully appointed assessors for a full three years' term.

Next, it is argued that the title of the act is defective as failing to express its object in a constitutional sense. It is

entitled "An act to provide for the appointment, term of office and salary of assessors in certain cities of this state, and prescribing their duties." The point made is that the phrase "certain cities" is too indefinite, and *Sneath* v. *Mager,* 35 *Vroom* 94, 99, is relied on. The title of the act examined in that case spoke of "certain towns, boroughs and townships." It was properly held unconstitutional because it was confined to such towns, boroughs and townships as had a population of ten thousand or over, according to the last census, and, consequently, the latter part of the opinion holding that the title was defective, was substantially *obiter.* It overlooked the fact that in Owens *v.* Fury, Matheson *v.* Caminade, Older *v.* Ridgway and McLean *v.* Gibson, a celebrated group of cases decided by Chief Justice Beasley, 26 *Id.* 1–11, statutes with similar titles were held constitutional, ignoring the alleged insufficiency of title altogether. Since the decision in Sneath *v.* Mager, the Paterson commission case of Attorney-General *v.* McKelvey, involving chapters 45, 46 and 62 of the laws of 1907, with titles precisely similar in their reference to "certain cities of this state," was considered by this court (49 *Id.* 3) and by the Court of Errors and Appeals (*Id.* 621) without any intimation by counsel or the court that there was any infirmity in the title; so that in *Quigley* v. *Lehigh Valley Railroad Co.,* 51 *Id.* (at *p.* 491), the present Chief Justice remarked: "It is true that in the opinion (in the McKelvey case) the validity of the title of the several statutes is not referred to, but it can hardly be supposed that such an apparent defect (if it was considered to be a defect) would have escaped the scrutiny of the astute counsel who attacked the statutes, or of the judges who affirmed their constitutionality. The acts then before the court were only three out of a mass of statutes having similar titles. If the present contention should be sustained, its effect would be to annul a large portion of the legislation of this state regulating the government of our municipalities, many of which (acts) have received judicial approval. This criticism, in our opinion, is not warranted." If the *dictum* in Sneath *v.* Mager is in point (and it will be noticed that the act in that case was not

confined to one kind of municipalities), it must be considered as overruled by this later pronouncement of this court.

It is argued further that the grouping of cities between fifteen thousand and thirty-five thousand population creates an unconstitutional class. But *Attorney-General* v. *Mc-Kelvey, supra,* is only one of a number of decisions which negative this proposition, so far as relates to acts applying to the structure and machinery of government of cities, of which acts that under examination is clearly one.

Finally, it is urged that it appears in fact that relator is still in office and therefore cannot bring *quo warranto* because he is not ousted or disturbed. The answer is that if there is only a partial intrusion *quo warranto* will lie; and where two persons each claim, as in this case, to be exercising in part at least, the duties of the same office, it is plain that one or the other is intruding. This was precisely the situation in *State* v. *Rogers,* 27 *Vroom* 480. It is true that in form the action was by the governor as relator against both claimants to the office of president of the senate; but the fourth section of the *Quo Warranto* act (*Pamph. L.* 1903, *p.* 375) enabling any citizen believing himself lawfully entitled to a municipal office to file as relator an information against any person "usurping, intruding into or unlawfully holding or executing" such office, appears plainly to cover such a case as the present. Respondent says in his plea that he took the oath of office, entered upon the performance of his duties and is still performing them. We fail to see how he can say that and at the same time assert that the relator is in no legal sense ousted.

Let judgment be entered for the relator, with costs.