## STATE EX REL. JOHN T. McCARTHY *v.* ELMER S. WATSON.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 7, 1945—decided January 17, 1946.

*William L. Hadden,* attorney general, and *Bernard A. Kosicki,* assistant attorney general, for the appellant (defendant).

*Samuel Reich,* with whom was *Adrian W. Maher,* for the appellee (plaintiff).

MALTBIE, C. J. The issue in this case is whether the defendant has been duly appointed to the office of commissioner of motor vehicles as successor to the relator, hereinafter called the plaintiff. The trial court gave judgment for the plaintiff and the defendant has appealed. Section 1549 of the General Statutes provides: "The governor shall nominate and, with the advice and consent of the senate, appoint, on or before May 1, 1933, and quadrennially thereafter, a commissioner of motor vehicles, who shall hold office for a term of four years from the first day of June in the year of his appointment and until his successor shall have been appointed and qualified. If any vacancy shall occur in the office when the general assembly shall not be in regular session, it shall be filled by appointment by the governor, and such appointee shall hold office until the convening of the next regular session of the general assembly, when said office shall be filled by appointment by the governor by and with the advice and consent of the senate." In full compliance with the provisions of this statute, the plaintiff was appointed commissioner for the term of four years from June 1, 1941, and until his successor was appointed and qualified. The commission which was issued to him by the governor stated that he was appointed for the term of four years but contained no reference to his continuance in office until a successor was appointed and qualified. On April 25, 1945, during a regular session of the General Assembly, the governor sent a communication to the senate in which he stated: "I have the honor to nominate, and with your advice and consent appoint, Elmer S. Watson of Wethersfield, to be Commissioner of Motor Vehicles for the term of four years from June 1, 1945, and until his successor shall be appointed and shall have qualified." The communication was read in the senate,

ordered printed in its journal and referred to its committee on executive nominations. At a meeting of the committee on the first or second of May following, it was unanimously voted not to make any report on the nomination. On May 25, 1945, the governor sent a communication to both houses of the General Assembly in which he stated that it was the duty of the governor to make certain appointments which required confirmation by both houses or by the senate, that the responsibility for the appointments rested on him, but that it was the duty of the General Assembly to act on them. No action other than the vote of the committee not to make a report on the nomination was taken by it or by the senate.

Section 4 of the General Statutes provides that the senate "shall act finally upon each nomination or appointment made by the governor and requiring the advice or consent of the senate, within ten session days from the date on which such nomination or appointment shall have been communicated to it by the governor." The tenth legislative day after the date when the governor sent to the senate the nomination of the defendant was May 11, 1945. On May 31, 1945, the governor wrote a letter to the plaintiff in which he called attention to the provisions of § 4 and to the facts that more than ten days had elapsed since he had sent the nomination of the defendant to the senate and that the senate had failed to act, and in which he notified the plaintiff that he, the governor, would consider the plaintiff's occupancy of the office of commissioner of motor vehicles after May 31, 1945, to be as a de facto officer and that, upon adjournment of the General Assembly, he would make an appointment to fill the vacancy in the office. Section 11c of the 1935 Cumulative Supplement to the General Statutes provides: "When the general assembly shall not be in

session and when no other provision shall have been made for filling any vacancy in an office originally filled by the general assembly or either branch thereof, or by the governor with the advice and consent of the general assembly or either branch thereof, the governor may fill the same until the sixth Wednesday of the next session of the general assembly, and until a successor shall be elected or appointed and shall have qualified." On June 7, 1945, after the General Assembly had adjourned, the governor issued two commissions to the defendant as commissioner of motor vehicles, one appointing him for the term of four years from June 1, 1945, and the other appointing him to fill a vacancy in the office from June 7, 1945, until the sixth Wednesday of the next General Assembly and until a successor should be appointed and qualified. The oath of office was administered to him, he filed a bond in compliance with the requirements of § 1555 of the General Statutes, and thus, if properly appointed, he became qualified to hold the office. The defendant was, under direction of the governor, put in possession of the office and since then he has been performing the duties and exercising the powers of commissioner of motor vehicles.

The provision in § 1549 that a duly appointed commissioner of motor vehicles shall continue to hold office after the expiration of the regular term of four years until his successor "shall have been appointed and qualified" means, of course, that a successor shall be properly appointed in accordance with the statutes. As the senate did not consent to the appointment of the defendant, the only way in which, in compliance with the terms of the statutes, an appointment could be made would be by the governor in order to fill a vacancy in the office. The primary question, then, is: Was there a vacancy in the office on June 7, 1945,

which the governor was authorized to fill? That in turn requires a determination whether, when the governor duly communicated to the senate his nomination of the defendant, asking its advice and consent, and the only action taken on the communication was the reference to the committee on executive nominations and the vote of that committee not to make a report on it, a vacancy in the office arose on the expiration of the regular four-year term for the office.

Section 11c of the 1935 Cumulative Supplement does not govern the situation before us, because it applies only "when no other provision shall have been made" for filling a vacancy and § 1549 contains specific provisions for filling a vacancy in the office of commissioner of motor vehicles. The latter statute governs. In determining whether there was a "vacancy," as that word is there used, which the governor was authorized to fill, it is necessary to examine certain previous decisions we have made where similar questions have been presented. In *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 23 Atl. 186, the issue was whether the relator or the defendant was lawfully entitled to the office of governor of the state. Article XXVII of the amendments to the constitution provides for biennial elections of state officers in November, who are to hold office for two years from the Wednesday after the first Monday of January following the election "and until their successors are duly qualified." The defendant had been holding the office of governor lawfully for the two years preceding the Wednesday following the first Monday of January, 1891. The opinion was largely devoted to a discussion of the question whether, as a result of the election in November, 1890, the relator had been legally chosen governor, but, as a basis for considering that issue, we said of the defendant's status (p. 358): "The term for

which he was elected was till the Wednesday following the first Monday of January, 1891, and until his successor was duly qualified. If then no successor to him has been chosen, or being chosen has not become duly qualified, the respondent still holds the office of governor. He holds that office since the said Wednesday in January, 1891, by the same warrant that he held it prior to that date, and continues to be the *de jure* governor of the state."

In *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 89 Atl. 172, the question was whether the relator had legally been appointed a judge of the police court of the city of Hartford to succeed the defendant. Article XX of the amendments to the constitution provides that judges of police courts shall be appointed by the General Assembly "for terms of two years." The defendant had been appointed judge of the police court by the General Assembly of 1911, and in the resolution making the appointment his term was specified to be for two years from July 1, 1911, "and until his successor is duly appointed and qualified." The charter of the city provided that the judge of the police court should hold office for two years "and until his successor shall be duly appointed and qualified." 15 Spec. Laws 134. The General Assembly of 1913 adjourned without appointing a successor to the defendant, and the governor, acting under a statute authorizing him to fill vacancies, appointed the relator. We held that appointment to be valid and effectual. We said (p. 542) that the effect of the words in the resolution making the appointment "until his successor is duly appointed and qualified" would be "to prolong the term until such time as his successor should be qualified. This was to appoint for a term of more than two years, and was in violation of the constitutional provision." We further said (p. 543): "We construed a constitutional provi-

sion which provided a tenure for a fixed term and until a successor should be qualified, as conferring upon the appointee the same *de jure* title after, as before, the fixed limit. *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 358, 23 Atl. 186. If the Constitution permitted it, the charter provision would have the same effect." But we held that the provision must yield to the constitutional requirement of a fixed term of two years. We pointed out that the word "vacancy" is not always to be taken in a strict technical sense, but went on to state (p. 547) of the statute then in effect authorizing the governor to fill vacancies, which differed from § 11c in no respect material to our discussion: "In the eye of the law an office is vacant when it is not filled by a *de jure* incumbent. It may be thus vacant when it is occupied by one who is not a *de jure* officer, as by a mere usurper. We think that the word 'vacancies' is used in this sense in the statute in question, not as indicating that the office is physically vacant, but that it is not occupied by a *de jure* officer. It provides that the Governor may fill any vacancy, however occurring. The plain purpose of the statute is to have every office supplied with a *de jure* officer, and applies as well to an office occupied by a usurper or a holdover or *de facto* officer, as to cases in which, by death or resignation, the office is left without any incumbent."

In *State ex rel. Lyons* v. *Watkins,* 87 Conn. 594, 89 Atl. 178, the issue concerned the appointment of a county commissioner. The office is not one established by the constitution and the statute provided that county commissioners should be appointed for the definite term of four years. The defendant was appointed in 1909 by a resolution of the General Assembly designating his term as four years "and until his successor is duly elected and qualified." The legislature of 1913 made no appointment to the office and after its ad-

journment the governor, acting under a statute authorizing him to fill vacancies, appointed the relator. We held that the resolution was ineffective to extend the term of office beyond that fixed by the statute, that after the expiration of the four years fixed in it the defendant occupied the office de facto and not de jure, and that there was a vacancy which the governor was authorized to fill.

In *State ex rel. Hendrick* v. *Keating,* 120 Conn. 427, 437, 181 Atl. 340, the relator had been duly appointed a member of the state board of finance and control under a statute which provided that members of the board should be appointed by the governor, with the advice and consent of the senate, for a term of six years; it then provided: "In each case an appointment shall be for the term hereinbefore designated and until a successor shall have been appointed and shall have qualified"; and it authorized the governor to fill any "vacancy" among the appointive members of the board. Public Acts, 1927, Chap. 297, § 1. In 1935 the governor sent to the senate a communication nominating and appointing the defendant to succeed the relator. The communication was referred to the senate committee on executive nominations but that committee made no report on the nomination. After the General Assembly had adjourned, the governor, acting under a statute authorizing him to fill any vacancy in the office, appointed the defendant. We stated (p. 432): "It is generally held that where the provision is that the incumbent shall hold until his successor is elected or appointed and qualified, without other provisions or considerations modifying or affecting it, there is not a vacancy to be filled in the manner provided for the filling of vacancies by other than the power and in the manner originally authorized to elect or appoint." We further said (p. 435): "If this statute

merely made the usual provisions for an appointment for a specified term 'and until his successor is appointed and qualified,' and authorized the Governor to fill any vacancy until some specified time when opportunity would have been had for an appointment with the advice and consent of the Senate, . . . it would be clear, in our opinion, that the relator would be authorized thereby and entitled to hold over until a successor had been appointed with the advice and consent of the Senate." We held, however (p. 435), that in determining whether there was such a vacancy as authorized the governor to make an appointment "the language of the particular statute, and the circumstances of the particular case" were to be considered. In view of the words used in the statute concerning appointments to the board and the general legislative plan for its constitution, we held (p. 439) that where a member continued in office by virtue of the provision that he should do so "until a successor shall have been appointed and shall have qualified," there was a vacancy in the office and the governor was authorized to appoint a successor. Finally, in *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 303, 184 Atl. 382, and in *State ex rel. Hoerle* v. *Thomas,* 127 Conn. 426, 429, 17 Atl. (2d) 514, we held that where a definite term of office is established without any provision that the incumbent continue after its expiration he is after that time a de facto and not a de jure officer.

Our law as established by these decisions may be summarized as follows: If, by constitutional provision or valid statute, a definite term is established for an office without provision that the incumbent shall continue in office after its expiration, he will, in holding over, be a de facto and not a de jure officer, and a vacancy will result which may be filled by the appointment, under proper authority, of a successor. If, how-

ever, the term of office is not only for a definite time but until a successor is appointed and qualified, an incumbent holding over is a de jure officer and, unless from the particular language of the statute or the particular circumstances of the case a different legislative intent appears, there is no vacancy in the office within a provision authorizing an appointment in such a contingency. In at least one significant instance, the latter principle was followed in the executive department. Chapter 93 of the Public Acts of 1909 provided that the highway commissioner should be appointed quadrennially by the governor with the advice and consent of the senate to hold office for four years "and until his successor is appointed and qualified," and that "if any vacancy occur" the governor might fill it "until the rising of the next succeeding general assembly." The incumbent had been duly appointed in 1907. In 1911, the governor, Hon. Simeon E. Baldwin, sent a communication to the senate in which he named a successor but the senate failed to act on the nomination. The governor nevertheless did not make any vacancy appointment to the office after the General Assembly adjourned. During the 1913 session the governor again sent a communication to the senate, making an appointment to the office for the unexpired portion of the term commencing July 1, 1911, and it was referred to the committee on executive nominations. That committee requested an opinion of the attorney general, Hon. John H. Light, upon the question whether the incumbent of the office held over for the full term of four years or might be succeeded at that session of the General Assembly by an appointment by the governor with the advice and consent of the senate. The attorney general advised that the incumbent was in office de jure and not de facto, that there was no vacancy which could be filled by appoint-

ment by the governor alone, but that, under the terms of the statute, a successor could be appointed at that session by the governor, with the advice and consent of the senate, for the balance of the term ending in 1913. Report of the Attorney General 1913-14, p. 26. Such an appointment was made.

Perhaps the leading case in other jurisdictions is *People* v. *Tilton,* 37 Cal. 614, from which we quoted in *State ex rel. Hendrick* v. *Keating,* supra. The California court was considering a constitutional provision authorizing the governor to fill vacancies as it applied to an office created by statute, the term of the incumbent of which was fixed as four years "and until his successor is elected, commissioned, and qualified as in this Act provided." The court said (p. 621): "It was manifestly the intent of the Constitution that the Governor should appoint only where there is no party authorized by law to discharge the duties of the office. The object was to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office. When there is a party expressly authorized by law to discharge those duties temporarily, till the power upon whom the duty of election, or appointment, is devolved can regularly act, there is no occasion for calling into exercise this extraordinary power vested in the Governor to make a merely *temporary* appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office when there is already a party expressly authorized by the Constitution, or laws to temporarily discharge those duties. The very reason upon which the power is vested in the Governor fails, and the case provided for has not arisen. And it can make no difference whether the language expressly authorizing a party to hold over and discharge the duties of an office temporarily till a

successor duly elected and qualified appears, is found in the Constitution, or in the statute. The same construction should be given to the same language used in the same connection, in reference to a similar subject matter, when used in a statute, as when used in the Constitution."

In *State* v. *Bowden*, 92 S. C. 393, 75 S. E. 866, the court, speaking of a constitutional provision, said (p. 398): "Unless the words 'until their successors have been appointed and qualified' are to be erased from the Constitution, the time which may elapse between the expiration of the two years and the actual appointment by and with the advice and consent of the Senate and the qualification of the successor is as much a part of the specific term of office fixed by the Constitution as the two years. The failure of the Governor to appoint, or of the Senate to act upon the appointment, or the rejection by the Senate of the appointment of the Governor does not create a vacancy." In *State ex rel.* v. *Wright*, 56 Ohio St. 540, 553, 47 N. E. 569, it is said that the time during which an officer holds office beyond the years primarily designated as constituting the term under a provision that he continue until a successor shall be appointed and qualified "is no less a part of his statutory term of office than is the fixed period itself." In the following cases, it was definitely held that one continuing in office under such a provision occupies it de jure and not de facto. *Ash* v. *McVey*, 85 Md. 119, 130, 36 Atl. 440; *State ex rel.* v. *Howe*, 25 Ohio St. 588, 595; *State ex rel. Carson* v. *Harrison*, 113 Ind. 434, 441, 16 N. E. 384. That the overwhelming weight of authority in other jurisdictions supports the conclusion that, unless there are peculiar circumstances distinguishing the situation, one holding over under such a provision does so as a de jure and not a de facto officer and there is no vacancy

appears from the cases cited above and the following additional decisions: *People* v. *Van Horne,* 18 Wend. (N. Y.) 515, 518; *Commonwealth* v. *Hanley,* 9 Pa. 513, 519; *Baxter* v. *Latimer,* 116 Mich. 356, 364, 74 N. W. 726; *Taylor* v. *Hebden,* 24 Md. 202, 212; *People* v. *Bissell,* 49 Cal. 407, 411; *Conger* v. *Roy,* 151 Tenn. 30, 42, 267 S. W. 122; *Chadduck* v. *Burke,* 103 Va. 694, 699, 49 S. E. 976; *Broadwater* v. *Booth,* 116 W. Va. 274, 276, 180 S. E. 180; *Pittman* v. *Ingram,* 184 Ga. 255, 257, 190 S. E. 794; *Mount* v. *Howell,* 85 N. J. L. 487, 488, 89 Atl. 977; *State ex rel. County Attorney* v. *Willott,* 103 Neb. 798, 799, 174 N. W. 429; *McCall* v. *Cull,* 51 Ariz. 237, 242, 75 Pac. (2d) 696; and see *Downing* v. *Cree,* 195 Iowa 57, 60, 190 N. W. 36; *State ex rel. Stain* v. *Christensen,* 84 Utah 185, 210, 35 Pac. (2d) 775.

It is true that in some of these cases, as the defendant points out, while the issue was whether the governor had power to fill a vacancy, appointment to the office in question was not primarily vested in him, but we do not see how that decreases the authority of those decisions; the essential issue presented in them, as in the case before us, was whether or not there was a vacancy which the governor had authority to fill; and that the original source of appointment to the office was not the governor would not materially affect the result. The defendant cites a few cases as reaching a different conclusion from that which we have stated. Of these, *Johnson* v. *Mann,* 77 Va. 265, is distinguished in the later Virginia case of *Chadduck* v. *Burke,* supra; *State ex rel.* v. *Murphy,* 32 Fla. 138, 13 So. 705, and *State ex rel.* v. *Amos,* 101 Fla. 114, 133 So. 623, were decided under provisions of the constitution of Florida so peculiar as to distinguish them; and we decline to follow *State ex rel. Withers* v. *Stonestreet,* 99 Mo. 361, 12 S. W. 895, *State ex inf.* v. *Wil-*

*liams,* 222 Mo. 268, 282, 121 S. W. 64, and *State* v. *Cocke,* 54 Tex. 482.

Unless there is some legislative intent disclosed in the statute now before us which takes this case out of the general rule, the failure to effectuate an appointment during the session of the General Assembly in 1945 did not create a vacancy in the office which the governor was authorized to fill but the plaintiff continued in office de jure and not de facto under the provision that his term should be for four years from June 1, 1941, and until his successor was duly appointed and qualified. It was undoubtedly the primary intent of the legislature that an appointment should be made to the office in every fourth year and in so far as the inaction of the senate in 1945 prevented that result that feature of the legislative plan was defeated. When the office was established by Chapter 232 of the Public Acts of 1917, it was necessary to direct in what year the first appointment should be made, and because of the requirement that thereafter when there was to be an appointment it should be made on or before May 1, the year would have to be designated. Hence, in the Revision of 1918, the statute was changed to require an appointment "on or before the first day of May 1921"; General Statutes, Rev. 1918, § 1517; and, as has been noted, the present revision changed the date to "on or before May 1, 1933." General Statutes, § 1549. In view of the evident need of specifying the years in which appointments should be made, the provision that a commissioner should be appointed on or before that date and quadrennially thereafter loses much of its significance as indicative of a fixed plan for appointment at least every four years. That aside, the sentence containing that provision did not stop with it but went on to provide that the term of the commissioner should

be for four years "and until his successor shall have been appointed and qualified." This provision is just as much a part of the legislative plan as the requirement of an appointment every fourth year. The words quoted cannot be ignored, because it is a recognized principle of statutory construction that every part of an act "should, so far as possible, be made operative and harmonious with every other part." *State* v. *Dorau,* 124 Conn. 160, 168, 198 Atl. 573. The provision that an incumbent shall continue in office until his successor shall be appointed and qualified clearly shows that the legislature definitely contemplated the fact that there might be a failure to appoint in accordance with the preceding part of the sentence and expresses an intent that in such an event the incumbent is to continue to hold the office. To say that there is such a breakdown in the legislative plan through the failure of the senate to act upon a nomination that a vacancy results is to disregard an integral portion of the very sentence in which that plan is set forth.

There are other considerations which fortify this conclusion. The statutes providing for appointment to many important offices in the state by the governor with the advice and consent of the senate make no provision as to filling vacancies but leave the matter to be governed by § 11c and its prototypes (see, e. g., General Statutes, §§ 2338, 3862; Cum. Sup. 1939, §§ 22e, 52e, 564e; Sup. 1941, § 336f) or provide that the governor may appoint for the unexpired portion of the term (see, e. g., General Statutes, §§ 1088, 3862; Cum. Sup. 1939, §§ 598e, 1059e). The act before us not only requires that the quadrennial appointments shall be made with the advice and consent of the senate but it gives the governor no power to appoint to a vacancy if the General Assembly is in ses-

sion, and when he is authorized to make a vacancy appointment it runs only until the next session of the legislature, when the office is to be filled with the advice and consent of the senate. The General Assembly displayed unusual solicitude to require the advice and consent of the senate as regards appointments to this office and to narrow the power of the governor to fill it without that advice and consent. It evidently intended that even a failure of a quadrennial appointment should not result in the discharge of the duties of the office by one who had not had the approval of the senate. To hold that in the event of that failure the governor might make a vacancy appointment would run counter to this portion of the legislative plan. Moreover, if inaction by the senate in this case produced a vacancy which the governor might fill because it defeated the legislative plan for quadrennial appointments, that plan would be just as much defeated should the senate, for sound reasons, refuse to confirm an appointment of a clearly unfit person; and it would be in the power of a governor, by sending to the senate the name of such a person, whom it rightly refused to confirm, to appoint after the adjournment of the General Assembly that person or someone else equally unfit to hold the office.

To construe the statute as meaning primarily that there shall be an appointment every fourth year but if for any reason that appointment is not duly made the incumbent shall continue in office until a successor is duly appointed gives effect to all of its provisions and accords with the underlying purposes which its language indicates were in the mind of the legislature. The situation falls within the statement already quoted from *State ex rel. Hendrick* v. *Keating,* supra, 435, where we said that if the statute then before us had merely made the usual provision for an appointment

for a specified term "and until his successor is appointed and qualified" and authorized the governor to fill a vacancy until some specified time when an appointment could be made with the advice and consent of the senate, it would be clear that a duly appointed incumbent would be entitled to hold the office until a successor was regularly appointed; and there are not present in this case the circumstances which there led us to the conclusion that the situation presented an exception to the general rule. We have not overlooked the contention on behalf of the defendant that, if the failure of the senate to act upon the nomination in this instance will continue the plaintiff in office, like inaction by senates of the future might project the situation indefinitely. We may not assume that they will follow the senate of 1945 in shirking the responsibility cast upon them by the requirement that they act upon nominations submitted to them by the governor; but if they do, the incumbent's continuance in office will result from the terms of a statute which, duly enacted, is the law of the state, and the intent of which neither the executive nor the courts can set aside.

The principal reliance of the defendant in his brief is upon the contention that the vote of the senate committee on executive nominations not to report upon the communication of the governor, resulting, as it did, in the failure of the senate to "act finally" upon the nomination as required by § 4 of the General Statutes, takes the situation out of the general rule. The purpose of that statute is clearly to require action upon a nomination made by the governor within the stated time so that if it is not confirmed he will have an opportunity to name another person to the office. The statute placed upon the senate a definite obligation and there can be no doubt that the committee

was derelict in its duty. As has been pointed out, the legislative intent expressed in the statute is that the office shall be filled by an incumbent selected by the governor and approved by the senate not only for the regular term of four years but also until a successor is duly appointed and qualified. The statute was a legislative enactment in which both houses of the General Assembly concurred and which the governor signed. To sustain the claim of the defendant that the effect of the vote of the senate committee was to put an end to the plaintiff's term of office on June 1, 1945, in disregard of the provisions of the statute that it would run until a successor was appointed and qualified, would be to hold that the senate by inaction could set at naught a statute enacted by both houses of the General Assembly and approved by the governor. If that were so, a governor, by failing to send an appointment to the senate for its advice and consent, could create a vacancy which he might fill, regardless of approval by the senate. The statute casts upon the senate a duty, in furtherance of the public welfare, to consider appointments made by the governor, to the end that only fit persons may hold the office; in acting upon an appointment it is not exercising a prerogative granted it in its own interest or that of its members; there can be no waiver of that duty so that inaction would be the equivalent of a tacit approval of an appointment.

The defendant, in his brief, comments on the fact that the commission issued to the plaintiff on his appointment in 1941 definitely specified four years as the term of office; but, as we stated in *State ex rel. Gray* v. *Quintilian*, supra, 306, "a term fixed by statute cannot be changed by the appointing power"; if that were not so, the executive could set aside the plainly expressed intention of the legislature. The words of the plain-

tiff's commission could not restrict his term of office to a shorter term than that provided in the statute.

In the course of the trial the court excluded a series of questions asked by counsel for the defendant of the chairman of the committee on executive nominations which were designed to show that the committee never inquired into the defendant's qualification to hold the office of commissioner of motor vehicles. If the witness had so testified, the fact would not have materially affected the significance to be attached to the vote of the committee refusing to report the nomination, and even if erroneous the ruling of the court did no harm to the defendant.

The trial court was not in error in holding that there was no vacancy in the office of commissioner of motor vehicles which the governor was authorized to fill by the appointment of the defendant.

There is no error.

In this opinion the other judges concurred.