STATE EX REL. IRSTON R. BARNES v. FREDERICK H.
HOLBROOK

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DALY, JS.

Argued November 22—decided December 14, 1949.

*William S. Gordon, Jr.*, with whom were *Leo Parskey* and, on the brief, *Mary C. Fitzgerald*, for the plaintiff.

*John R. Thim*, with whom was *Anthony I. Wells*, for the defendant.

MALTBIE, C. J.   The question presented in this reservation is whether a member of the public utilities commission appointed by the governor to fill a vacancy "until the rising of the next session of the general assembly" continues to hold office de jure after that time, where the Assembly failed to appoint anyone to fill the unexpired portion of the term, or is thereafter merely a de facto officer whom the governor can replace by another vacancy appointment.   The answer to the problem depends upon the meaning and effect

of certain statutes, all of which as they appear in the 1949 Revision are unchanged from the form which they had in the 1930 Revision or in a subsequent supplement in effect when the appointment was made, and we shall refer to them as they are incorporated in the 1949 Revision.

Section 5391 provides that the public utilities commission shall consist of three electors appointed by the General Assembly upon nomination of the governor, each to serve for a term of six years from the first day of July following his appointment and until a successor is appointed and has qualified. Section 5392 provides: "If any vacancy occurs in said commission at any time when the general assembly is not in session, the governor shall appoint a commissioner to fill such vacancy until the rising of the next session of the general assembly. Any other vacancy shall be filled, for the unexpired portion of the term, in the manner provided in section 5391." Carl M. Sharpe, a member of the commission, died, and on August 26, 1948, when the General Assembly was not in session, the then governor appointed the defendant to serve until the rising of the next session of the Assembly. On April 29, 1949, the present governor submitted to the General Assembly the nomination of Charles W. Knapp to fill the vacancy caused by the death of Sharpe and to serve until the expiration of the term for which the latter had been appointed, that is, until June 30, 1953. The General Assembly adjourned its regular session of 1949 on June 8 without having taken any action on the nomination. On July 1, 1949, the governor appointed the relator, hereinafter called the plaintiff, to serve from that date until the rising of the next session of the General Assembly. If the term of the defendant expired on the rising of the General Assembly, he would continue in office thereafter only as a de facto

officer and there was a vacancy which the governor could fill under the provisions of § 5392; but, if after the rising of the Assembly the defendant held office de jure, the governor was without authority to replace him. *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 527, 45 A. 2d 716.

As the plaintiff argues, the word "until" is in itself a word of limitation; as used in § 5392 it definitely fixes the time when a vacancy appointment made by the governor is to expire; *Whitford* v. *Lee,* 97 Conn. 544, 560, 117 A. 554; and, if the issue before us were to be determined upon the basis of that section alone, it might be difficult to hold that the defendant, after the rising of the session of the General Assembly in 1949, was anything more than a de facto officer. That brings us to the question whether § 260 of the General Statutes applies to the situation before us. That section provides: "Unless otherwise specifically provided by law, each person appointed or nominated for appointment by the governor, with or without the advice and consent of the general assembly, or either house thereof, and each person appointed or elected by the general assembly, or either house thereof, shall be sworn and shall hold office for the term prescribed by law and until his successor shall be appointed and shall have qualified. Such persons shall receive no compensation for services unless the same shall be prescribed by law, but shall receive their actual and necessary expenses incurred in the performance of their official duties."

The situation before us falls within the literal meaning of this section. The words "unless otherwise specifically provided by law" refer to other statutes which deal specifically with the subject matter of the general provisions of § 260, that is, continuance in office after the expiration of a fixed term. *State ex rel. Ryan* v.

*Bailey,* 133 Conn. 40, 47, 48 A. 2d 229. Section 5392 contains no such provision; and an appointment by the governor under it is not within the exception. The defendant was "appointed . . . by the governor . . . without the advice or consent of the general assembly, or either house thereof." An appointment to hold office "until the rising of the next session of the general assembly" is for a "term prescribed by law" just as much as though it was to run to a date specifically designated. It is true that § 5392, under which the governor acted, does not use the word "term," but to conclude from this that the General Assembly did not intend that § 260 should apply to supplement it is to subject the latter statute to a scrutiny entirely too meticulous. The continuance of the term of an officer under § 260 "until his successor shall be appointed and shall have qualified" means that it shall continue until a successor is appointed in accordance with the provisions of the statute governing regular appointments to the office. *State ex rel. Hendrick* v. *Keating,* 120 Conn. 427, 434, 181 A. 340; *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 533, 45 A. 2d 716. Unless, then, there are other circumstances which serve to narrow the scope of § 260 beyond its literal meaning, the defendant continued to hold office de jure after the rising of the 1949 session of the General Assembly and there was no vacancy in the office which the governor could fill.

We find in §§ 5391 and 5392 no reason to hold that § 260 does not apply to a vacancy appointment by the governor. It is true that § 5391 provides that the term of one regularly appointed to the commission continues not only for the six years specified but also until a successor is appointed and has qualified, and that under § 5392 a vacancy appointment not within the power of the governor to make is to be for the un-

expired portion of the term, which would include a like extension, whereas in the case of a vacancy appointment by the governor there is no such provision. The very purpose of enacting § 260 was to provide an extension of the term of office where the particular governing statute did not contain one and so to bring the various offices into harmony in that regard; the section was in effect an amendment to each statute fixing a definite term of office without any provision as to an officer's continuing to hold the position at its expiration; its purpose was "to benefit the public by guarding against the danger of there being no de jure officer to discharge the duties of an office to which it applied, with the consequent confusion and inconvenience which that was likely to involve"; and it is a remedial statute which should receive as liberal a construction as can reasonably be given, to effectuate its beneficial purpose. *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 45, 46, 47, 48 A. 2d 229. A conclusion that § 260 applies in the situation before us fully accords with our decision in that case.

If we consider the purpose of the statute, its application to such a situation as the one before us is confirmed. In *State ex rel. Ryan* v. *Bailey,* supra, 45, we traced the history of the statute and (p. 46) we pointed out that its purpose was to prevent a situation where there would be no person holding de jure the office in question. If we look at the power of the governor to fill vacancies in other state offices the regular appointments to which require confirming action by the General Assembly or one of its houses, we find that the term of the appointee sometimes, as in the case of the important office of commissioner of motor vehicles, is expressed to run until "the next regular session of the general assembly"; General Statutes, § 2351; see also §§ 2765, 2996; and sometimes the appointment runs to

the second or the third Wednesday of the session of the General Assembly, as in the case of members of the board of pardons, § 3019; see also § 4041. Under such provisions we can take judicial notice that action by the General Assembly upon appointments to the office will usually not be taken within the time set for the expiration of the vacancy appointment; and certainly such situations fall within the legislative purpose expressed in § 260, so that the vacancy appointment would run at least until a successor was regularly appointed. Confirmation for the conclusion that the General Assembly meant § 260 to apply to vacancy appointments by the governor is found in the provisions of § 92 of the General Statutes; that statute gives the governor general power to fill a vacancy in an office when the General Assembly is not in session and no other provision has been made for filling it, and specifies that the term of the appointee is to run "until the sixth Wednesday of the next session of the general assembly, and until a successor shall be elected or appointed and shall have qualified." See *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 546, 89 A. 172; *State ex rel. Rundbaken* v. *Watrous,* 135 Conn. 638, 645, 68 A. 2d 289. To apply § 260 to the situation before us is to bring the provisions for a vacancy appointment of a member of the public utilities commission into harmony with the general legislative intent expressed in § 92.

We are unable to find any practical reason for a conclusion that the General Assembly did not intend such a result. We must reject the plaintiff's argument that public policy requires that members of the public utilities commission should be persons acceptable to the governor in office for the time being; that body performs quasi-judicial functions; we must assume that in making appointments to it every governor performs

his duty to select only men qualified to hold the office; and we cannot believe that any public policy will be served by holding that because a member so appointed by one governor is not acceptable to a succeeding governor he should be supplanted. In fact the requirement as to regular appointments to the commission that they be made by the General Assembly upon the nomination of the governor in itself indicates that the mere personal preference of a governor is not to be the controlling consideration in making an appointment. On the other hand, the great desirability of stability in office of men duly appointed would point to a legislative policy aimed against such a speedy change in personnel as would result by such a replacement of men in office as the plaintiff seeks to effect in this case. It could not but result in a serious inroad upon the efficient operation of the commission. The fact that the terms of members of the commission are six years points to a conclusion that the legislature deemed the office one where experience acquired in the performance of the duties of the commission was of value; and a situation where one man serves on the commission from August 26, 1948, to the rising of the session of the General Assembly on June 8, 1949, and another is appointed on July 1, 1949, to succeed him, not as a regular six-year appointee but to serve only until the rising of the General Assembly in 1951, does not accord with a sound governmental policy.

In *State ex. rel. Hendrick* v. *Keating,* 120 Conn. 427, 433, 181 A. 340, and *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 529, 45 A. 2d 716, we approved this statement from *People ex rel. Baird* v. *Tilton,* 37 Cal. 614, 621, where the court, in speaking of a constitutional provision authorizing the governor to fill vacancies, said: "It was manifestly the intent of the Constitution that the Governor should appoint only

where there is no party authorized by law to discharge the duties of the office. The object was to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office. When there is a party expressly authorized by law to discharge those duties temporarily, till the power upon whom the duty of election, or appointment, is devolved can regularly act, there is no occasion for calling into exercise this extraordinary power vested in the Governor to make a merely *temporary* appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office when there is already a party expressly authorized by the Constitution, or laws to temporarily discharge those duties. The very reason upon which the power is vested in the Governor fails, and the case provided for has not arisen. And it can make no difference whether the language expressly authorizing a party to hold over and discharge the duties of an office temporarily till a successor duly elected and qualified appears, is found in the Constitution, or in the statute." That statement is wholly applicable in the situation before us.

The plaintiff cites to us in support of his contention three Missouri cases: *State ex rel. Cosgrove* v. *Perkins,* 139 Mo. 106, 40 S. W. 650; *Aiken* v. *Sidney Steel Scraper Co.,* 197 Mo. App. 673, 678, 198 S. W. 1139; and *State ex inf. Major* v. *Amick,* 247 Mo. 271, 152 S. W. 591; but these decisions were so controlled by the statutes of that state as to be of no particular help to us. He also cites two Maryland cases, *Kroh* v. *Smoot,* 62 Md. 172, and *Sappington* v. *Slade,* 91 Md. 640, 48 A. 64, but the particular provision of the constitution of that state considered in those cases was not one which generally continued the terms of officers until successors were appointed and had qualified but provided that an

appointment to fill a vacancy should run only "until the end of the next session of the Legislature, or until some other person is appointed to the same office, whichever shall first occur"; and the conclusion that one so appointed could not continue in office de jure after the end of the next session of the legislature throws no light on the problem before us.

To the question propounded in the reservation asking whether Frederick H. Holbrook was on July 1, 1949, a de jure member of the public utilities commission, we answer "Yes"; to the question asking whether Irston R. Barnes is legally entitled to hold office as a member of the public utilities commission, we answer "No."

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.