### BAXTER *v.* LATIMER.

1. Offices—Vacancy—What Constitutes.

     An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally-qualified incumbent who has a lawful right to continue therein until the happening of some future event.

2. Militia—Field Officers — Expiration of Term — Holding Over.

     Act No. 63, Pub. Acts 1895, relative to the Michigan National Guard, provides that the field and line officers, except when elected to fill a vacancy, shall be commissioned for a term of three years from the date of their election, and until their successors are commissioned. *Held*, that no vacancy exists upon the expiration of a regular term, but the incumbent holds over pending the issuance of a commission to his successor.

3. SAME—ELECTION.

    1 How. Stat. § 901, relative to the organization of the Mich-
igan National Guard, provides that the regimental field
officers may be elected by the company officers. Act No. 198,
.Pub Acts 1893, empowers the "field and company officers,"
by a majority vote, to fill vacancies in the field offices.
Authority is nowhere conferred upon the field officers to
participate. in a general election. *Held,* that an election for
a regimental field officer for a full term, participated in by
certain field officers whose votes were required to make a
majority for the person declared elected, was void, and that a
new election was properly ordered by the commander-in-chief.

*Mandamus* by Charles S. Baxter to compel William G.
Latimer, colonel of the 4th infantry of the Michigan
National Guard, to vacate an order calling for an election
of field officers. Edwin M. Irish, adjutant general, Henry
B. Lothrop, and others intervened. Submitted February
15, 1898. Writ denied March 15, 1898.

    *John Atkinson,* for relator.

    *Edwin M. Irish, in pro. per.*

    *Edwin F. Conely* and *Orla B. Taylor,* for other inter-
veners.

    LONG, J.   The relator asks a *mandamus* to compel the
respondent to vacate an order calling an election to be
held by the officers of the 4th regiment to elect field offi-
cers, and to recognize the relator as major of said regi-
ment.   The petition sets out, substantially, that at a reg-
ular meeting of the officers of said regiment held October
5, 1897, for the purpose of electing field officers, there
were present 27 officers, being all the officers of said regi-
ment duly commissioned; that George L. Winckler was
present, and claimed to be a second lieutenant, under a
commission dated September 21, 1897, and signed by the
governor of this State; that the colonel commanding said
regiment and presiding at the meeting referred the matter
of allowing said Winckler to vote to a committee, which
reported that, at the time said commission was issued, the

governor was absent from the State. The petition further states that in fact the governor was absent from the State from September 13 to October 15, 1897, and was all that time *en route* from Detroit, this State, to Venezuela and back, or in Venezuela, and that on the 21st day of September he was not executing, or claiming to execute, the office of governor, but that the same had devolved upon, and was being executed by, the lieutenant governor; that at said meeting it was regularly moved and supported and carried that the commission of said Winckler be not recognized, and in accordance with said motion the chairman refused to allow him to vote; that a ballot was ordered, and 14 votes were cast for relator as major; that 13 of the officers present answered to their names, but refused to vote; and that relator, having received all the votes cast, and the votes of a majority of all the officers present, was duly declared elected. The petition then recites that the relator thereupon filed his acceptance as required by law, and that a return was made of said election to the adjutant general of the State, but that the adjutant general, having received a protest from the 13 officers refusing to vote, and from Winckler, against the action thus taken, and alleging that Winckler was entitled to vote at said election, ordered the election to be set aside and a new election held; that the colonel commanding said regiment appealed from the decision of the adjutant general to the governor, who has since that time decided that on the date of the commission to Winckler he was absent from the State, and that said commission was invalid; that, notwithstanding that fact, the election has been called by the adjutant general. Upon the filing of this petition an order to show cause was entered in this court, and all proceedings stayed.

The answer of Col. Latimer admits the facts stated in the petition. The adjutant general and all the parties interested were thereupon permitted to appear in the cause, and be represented by counsel.

The adjutant general makes a return to the order, in

which is set out all the official records in his office, together with certain affidavits, from which it appears that Harry F. Chipman, prior to September 8, 1897, was acting as second lieutenant of Company D, 4th regiment, under a regular election and commission, and that on September 8, 1897, he resigned his said office, forwarding his resignation direct to the adjutant general, and also through military headquarters, the same being indorsed "Approved" by the regimental and brigade commanders. It appeared also that Lieut. Chipman had been elected sheriff of Wayne county. This resignation was duly accepted by the adjutant general, as was and long had been the custom of that office, without reference to the governor. Thereupon the adjutant general ordered an election to fill the vacancy in the office of second lieutenant of Company D aforesaid. An election was held by that company, and Lieut. Winckler was duly elected, and on September 17th an official return of that election was made to the adjutant general. A showing is also made by affidavit that a report of this election was also made through the proper military channels, and a certificate was filed by the inspector general, showing that Lieut. Winckler had a full and fair examination, and that he was qualified for the office, with a recommendation that a commission issue. Upon the filing of the oath of office by Lieut. Winckler, a commission was issued to him by the adjutant general. This commission was issued September 21, 1897, and bears the genuine signature of Gov. Pingree, was countersigned by the secretary of state and by the adjutant general, and bore the great seal of the State. It appears, however, that the commission so issued was upon a blank which had theretofore, and before he left the State, been signed by Gov. Pingree, and deposited in the office of the adjutant general. It is claimed by the adjutant general that there has long been an established custom for each governor to leave with the adjutant general blank commissions, ready to issue, and duly signed by the then governor, and that in accordance with this custom he

issued the commission to Lieut. Winckler during the absence of the governor from the State.

It is further shown by the return of the adjutant general that, before the election of Lieut. Winckler as second lieutenant, he had been for many years an enlisted soldier in the company, and at the time of his election was first sergeant of said company; that on September 22d, when the commission was delivered to him, he was by his captain relieved from duty as first sergeant, and placed on duty as second lieutenant, and since that time has performed the duties of second lieutenant in that company, and has ever since been recognized as second lieutenant of that company by the officers and members of the company. It is claimed he was therefore entitled to vote at the election. The adjutant general further returns that after he received the protest from the 13 officers of the regiment, and from Lieut. Winckler, he was asked by Col. Latimer to refer the matter to the governor, and that upon such reference the governor, on December 13, 1897, ordered that a new commission issue to Lieut. Winckler, and that a new election be had; that, upon the receipt of this order, a new election was ordered and duly held, but that the officers failed to elect. It appears now that under the call for a new election there is a deadlock in the election; 14 voting for one set of officers, and 14 for another. In further answer to the petition, the adjutant general returns that he had no official notice of the governor's absence from the State, and no notice whatever except newspaper rumor; that the lieutenant governor never assumed command of the National Guard, and never in any way communicated with or gave instructions to the adjutant general of that fact, or in any way modified his standing authority to act.

Upon this state of facts, it is claimed by counsel for relator that relator was elected, whether Lieut. Winckler was entitled to vote or not; that upon the assumption that he was entitled to vote, and that his vote ought to have

been received, there were 15 of the 28 taking part in the election, as the other 13 refused to take part in it; that 15 would be a quorum, and the majority of the 15 would be sufficient to elect; that, as the record stands, it is clear that Lieut. Winckler's vote, if received, could in no way have affected the result; that its rejection was not prejudicial, and does not therefore affect the result; that, assuming that Lieut. Winckler was not entitled to vote, then there were only 27 officers in the regiment, and the 14 who voted for the relator constituted a quorum, and a clear majority.

We are met at the outset with the proposition from respondent's counsel that no legal election was held, as, under the statutes of this State, the regimental field officers had no right to vote at that election. Section 901, 1 How. Stat., provides:

"Companies may elect their own officers in the manner to be prescribed in general regulations; regimental field officers may be elected by the company officers according to general regulations."

Section 927 provides:

"On the occurrence of any vacancy in office after the first organization of any company, the members thereof may proceed to elect some person to fill such vacancy."

Section 928 provides:

"The manner, time, and place of holding and conducting all company. elections shall be regulated by the by-laws of such company. All vacancies in the field officers of a regiment shall be filled by a majority vote of the commissioned officers of said regiment, at a time not exceeding sixty days from the date such vacancy occurs, to be fixed by the officer commanding such regiment. Ten days' notice of the time and place of holding such election shall be given in writing to each company officer in said regiment."

By Act No. 198, Pub. Acts 1893, section 928, 1 How. Stat., was amended so as to read, "All vacancies in the field officers of a regiment shall be filled by a majority

vote of the field and company officers of said regiment present at a time to be fixed by the officer commanding such regiment;" the 10-days notice in such case to be given, etc.

By Act No. 63, Pub. Acts 1895, it is provided:

"The field and line officers, except when elected to fill a vacancy, shall be commissioned for a term of three years from the date of their election, and until their successors are commissioned."

It will be noticed that section 901 has not, in terms, been amended by these acts. It is apparent that, at the first organization of companies into a regiment, there would be none but company officers to elect the field officers of the regiment. It is also apparent that section 901 is the only section providing for the election of the field officers of a regiment, except in cases of vacancies. Section 928 provides for the election of regimental field officers in cases of vacancies. The modes of election, and the officers who may participate in the election, are different, under the two sections. Under section 901, the regimental field officers are to be elected by the company officers. Under section 928, in cases of vacancies the regimental field officers are to be elected, under Act No. 198, Pub. Acts 1893, by the "field and company officers of said regiment." By the act of 1895, regimental field officers, except when elected to fill a vacancy, are commissioned for three years from date of election, and until their successors are commissioned. Can it be said that there were vacancies in the field officers of this regiment, within the meaning of these statutes, at the time the election was called and held? It was evidently the intent of the legislature, by the act of 1895, that no vacancies should occur by lapse of time of service, but that the officers commissioned for three years should hold over until their successors were commissioned. In *State* v. *Howe*, 25 Ohio St. 588 (18 Am. Rep. 321), it was held that where an officer appointed by the governor, by and with the advice and consent of the senate, is authorized to hold his office for a

term of three years, and until his successor is appointed and qualified, and no appointment of a successor is made by the regular appointing power at the expiration of his term of three years, the office does not become vacant, but the incumbent holds over as a *de jure* officer until his successor is duly appointed and qualified.     McIlvaine, C. J., said in that case:

"That the framers of the constitution, in providing for filling vacancies in office, did not regard an office as vacant when an incumbent might lawfully hold over his definite term until a successor was elected or appointed and qualified, is manifest from other provisions in the instrument.     By section 4, art. 10, the duration of the term of township officers is fixed at one year from the Monday next succeeding their election, and until their successors are qualified.     It would hardly be contended that, under this provision, a township office becomes vacant at the end of the year, from the mere fact that no successor to the incumbent has qualified.     Again, the following provisions are found in the schedule:     Section 7 provided that all county and township officers and justices of the peace in office on the 1st of September, 1851 (when the constitution took effect), should continue in office until their terms expired, respectively; section 8 provided for the filling of vacancies which might occur after that date, and until officers were elected or appointed and qualified under the constitution; and section 10 provided that all officers should continue in office until their successors should be chosen and qualified.     Under these provisions in the schedule, it cannot be doubted that all officers in office on the day named continued in office *de jure* until their successors were chosen under the new constitution, unless removed by death or otherwise, although their fixed and definite terms expired before their successors were chosen; or, in other words, by virtue of section 10, the expiration of terms did not create vacancies to be filled under the provisions of section 8."

In *State* v. *Johns*, 3 Or. 537, it was said:

"Vacancy in an office means the want of an incumbent at the time.     *     *     *     Vacancy in an office is one thing, and term is another.     An office may be vacant and filled many times during a term of four years."

An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally-qualified incumbent who has a lawful right to continue therein until the happening of some future event. *People, ex rel. Baird*, v. *Tilton*, 37 Cal. 614; *State, ex rel. Tredway*, v. *Lusk*, 18 Mo. 333; *Com., ex rel. Broom*, v. *Hanley*, 9 Pa. St. 513. The foregoing is the rule in this State, as is well illustrated in *People, ex rel. Andrews*, v. *Lord*, 9 Mich. 227; *Lawrence* v. *Hanley*, 84 Mich. 399; *Conely* v. *Detroit Common Council*, 93 Mich. 446. We must presume that the legislature used the word " vacancy " in the statute in the sense in which the courts had theretofore interpreted it.

In the present case there were no vacancies in the field officers of the regiment. It appears that the colonel, lieutenant colonel, senior major, and junior major were in office, either for the original term of three years, or under the legal extension thereof by reason of their holding over until their successors were elected. Therefore the election must be held under the provisions of section 901, and in which election only the company officers can participate. Section 928 has no reference to a general election, but to an election only to fill a vacancy, and it is at such an election only that the regimental field officers have the right to vote. It may have been an oversight in the legislature in not providing that regimental field officers, after the first election, may participate in all elections, whether general or to fill vacancies, but the legislature has not so provided by these statutes. However, we do not question the policy of the legislature in providing that regimental field officers shall be elected by company officers, except in cases of vacancies. It is a matter resting entirely with that body. It appears to be conceded by the parties hereto that the regimental field officers did take

part in the election under which relator claims to have been elected. It also appears from the return that the colonel and lieutenant colonel were among those voting for relator and the other field officers claiming to have been elected, and without their votes those claiming to have been elected would not have received a majority vote of those present at the election. We think for these reasons the election was void, and the governor could and did very properly call another election. We see no objection to the governor's making the call through the regimental officer, but, when the company officers assemble, they, and they alone, constitute the electoral body. Lieut. Winckler now having received a new commission, no question can be raised as to his right to vote.

In this view of the case, it is unnecessary to discuss the other questions raised. The writ will be denied. No costs will be allowed.

The other Justices concurred.