PEOPLE *v.* KAPLAN.

1. Criminal Law—Grand Jury—Validity of Indictment—De Facto Grand Jury.

Indictments returned by grand jury continuing to exercise its functions beyond term in which it was organized are not void, although they are in connection with matters not under consideration by it before term was concluded.

As to organization of grand jury—time and term, see annotation in 27 L. R. A. 776; 49 L. R. A. (N. S.) 1215.

2. SAME—INDICTMENT AND INFORMATION—AMENDMENT—PERJURY.

Where indictment returned by grand jury was sufficient, under 3 Comp. Laws 1929, §§ 17258, 17287, to charge perjury in connection with testimony given before it, there was no error in permitting amendment thereto by prosecutor specifically charging that alleged perjured testimony was false and material.

3. SAME—WITNESSES—COMPELLING DEFENDANT TO INVOKE PRIVILEGE.

Indorsing name of defendant's former attorney on indictment and calling him to witness stand, placing defendant in position where he was compelled to invoke privilege, constituted reversible error.

4. SAME—PERJURY—ISSUES.

Charging defendant with perjury in testifying before grand jury that he did not know there was house of prostitution in certain city put in issue and necessitated proving existence of house of that character actually kept or operated as such.

5. SAME—HOUSE OF PROSTITUTION—EVIDENCE—REPUTATION.

Keeping or operating house of prostitution should be established by proof of fact, and this cannot be accomplished by proof of reputation alone.

6. SAME—TRIAL—INSTRUCTION.

Where, in prosecution for perjury, existence of house of prostitution in certain city was issue, instruction from which jury might infer that existence of house of that character might be established by reputation alone was error.

7. SAME—EVIDENCE—HEARSAY.

In prosecution for perjury, introduction in evidence of statements written by witness for prosecution and found on his person nearly month before trial was reversible error, where jury were not instructed as to any particular application or limited use to be made of same.

8. SAME—APPEAL AND ERROR—CROSS-EXAMINATION.

In prosecution for perjury, error in permitting introduction in evidence of statements written by witness for prosecution and found on his person nearly month before trial was not alleviated by fact that defendant's counsel had opportunity to cross-examine witness.

Appeal from Recorder's Court of Detroit; Jeffries (Edward J.), J.  Submitted October 15, 1931. (Docket No. 211, Calendar No. 35,714.)  Decided December 8, 1931.

Jacob Kaplan was convicted of perjury.  Reversed, and new trial ordered.

*Chawke & Sloan* and *Emil Colombo,* for appellant.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Edmund E. Shepherd,* Assistant Prosecuting Attorney, for the people.

NORTH, J.  Appellant was convicted of perjury in testifying before a Wayne county grand jury.  The first question presented is:

"Can a grand jury continue to exercise its functions beyond the term in which it was organized, so as to return indictments in connection with matters not under consideration by it before the term of court is concluded?"

Defendant, being indicted for perjury, stood mute, and, before the jury was impaneled, raised the above question by motion to quash the indictment.  He claims the answer should have been in the negative, and that the grand jury was without jurisdiction to conduct the investigation incident to which this charge of perjury is made, and therefore his conviction cannot be sustained.  The question presented has been passed upon by this court in *People* v. *Morgan,* 133 Mich. 550.  It was there held (syllabi):

"Though the statute contemplates that a grand jury will complete its work during the term to which it is summoned, yet, when it is continued into the

next term, and is recognized by the court as a valid jury in receiving its indictments, it is a *de facto* grand jury, and its indictments are not void.

"An indictment of a *de facto* grand jury, not being void, cannot be set aside on motion to quash or by challenge to the array."

See, also, 12 R. C. L. p. 1015; *State* v. *Noyes,* 87 Wis. 340 (58 N. W. 386, 27 L. R. A. 776, 41 Am. St. Rep. 45).

The second question raised by appellant is thus framed:

"Is an indictment returned by a grand jury subject to amendment by the prosecuting attorney as to matters of substance?"

The indictment returned by the grand jury quoting appellant's testimony which is made the basis of this perjury charge sets forth: "The said Jacob Kaplan * * * knowingly, falsely, wilfully, maliciously, corruptly, and feloniously did so depose and swear, well knowing that said testimony was false and * * * that the matters so sworn to before said grand jury were material matters." By the amendment, of which complaint is made, the prosecution was allowed to specifically charge in the indictment that the alleged perjured testimony was false and material. There was no error in permitting the amendment. The indictment as first framed was sufficient under the provisions of the Michigan Code of Criminal Procedure (3 Comp. Laws 1929, § 17258), which provides that the indictment for perjury may be in the following form:

"A. B. appeared as a witness in a case between C. D. and E. F. being heard before the (set forth the tribunal) and committed perjury by testifying as follows: (set forth the testimony)."

Section 17287, 3 Comp. Laws 1929, further provides:

"An indictment for perjury  *  *  *  is sufficient which indicates the offense for which the accused is prosecuted, the nature of the controversy in respect of which the offense was committed and before what court or officer the oath was taken or was to have been taken."

The remaining questions presented for review are thus stated:

"Is it reversible error to indorse upon the information the name of a former attorney of the defendant to testify as to matters that were confidential?

"Can the existence of houses of ill repute be established by reputation testimony alone?

"Can papers found on the person of a witness, reflecting upon the defendant and not being in his (defendant's) handwriting, be admitted in evidence against him?"

The indictment charged defendant with perjury in testifying before the grand jury as follows:

"That he had never paid one Art Willard, a practicing attorney in the city of Hamtramck, in said county, any money for the defense of any women or woman arrested or charged for or with the offense of prostitution, and further, that he had never paid said Art Willard any money for any purpose."

Touching the first of the three questions above quoted, the record disclosed that the prosecuting attorney, Mr. Toy, called as a witness Arthur Willard, an attorney practicing in Wayne county, and in the presence of the jury asked him the following questions:

"*Mr. Toy:* I will ask you whether or not you were ever hired by Jacob Kaplan to represent in

court girls who were charged with prostitution, in the city of Hamtramck?

"*Mr. Chawke:*   I will object to it for the reason that if he did, the relationship of attorney and client appear.   *   *   *

"*Mr. Toy:* · I think, your honor, that anything said—any communication made or conversation had, that would be privileged between them, that rule might apply, but I think it would have to be shown first that the relationship existed.   *   *   *

"*Mr. Toy:* All right, I will withdraw that question and put it this way, if your honor please.

"*Q.* Did the defendant, Jacob Kaplan, ever pay you any money for the defense—for your defense of girls charged with prostitution in the courts of Hamtramck?"

This was followed by a discussion between the court and counsel, and thereafter, on request of defendant's counsel, the jury retired. The court after consideration sustained defendant's objection and later struck from the record all of the testimony of this witness. Defendant's counsel moved the court to declare a mistrial giving as a reason the following:

"That the action of the prosecuting attorney in indorsing the name of Mr. Willard upon the indictment and calling him to the witness stand has placed the defendant in a position where he was compelled to invoke the privilege, and having invoked it, it must have, of necessity, been considered prejudicial by the court."

The motion was denied and error is alleged. At the close of the proofs and just before the arguments, the jury was advised by the court that all of Mr. Willard's testimony was stricken and that his testimony and the prosecuting attorney's opening . statement as to what he expected to prove by

Mr. Willard should be "absolutely obliterated" from the jury's minds. This court has several times had occasion to pass upon a similar course of conduct by prosecuting attorneys and has held it constituted reversible error. We so hold in the instant case.

"It constitutes error to compel the defendant in the presence of the jury to assume the attitude of keeping out testimony, only admissible by virtue of her consent." *People* v. *Werner*, 225 Mich. 18.

"This court has frequently held that confidential communications between attorney and client are not to be revealed at any time." *People* v. *Dahrooge*, 173 Mich. 375, citing numerous cases.

See, also, *People* v. *Trine*, 164 Mich. 1, citing many cases.

Appellant's next question is based upon alleged error in the charge of the court, wherein it is stated:

"Houses of prostitution are proven by reputation, and it is for you to determine, from the testimony you have heard in this case, as to whether at the time the respondent gave his testimony before the grand jury, or a reasonable time prior thereto, there were existing houses of prostitution in Hamtramck."

We think the instruction might well have been accepted by the jury as meaning that proof of reputation alone was sufficient. Without holding that, aside from other error, this would be ground for reversal, we may note that the defendant is charged with perjuring himself by testifying that he did not know there was a house of prostitution in Hamtramck. We think this put in issue and necessitated proving the existence of a house of that character actually kept or operated as such. The keeping or

operating of a house of prostitution should be established by proof of the fact. This cannot be accomplished by proof of reputation alone. This, we think, is in harmony with Justice CAMPBELL's opinion in *O'Brien* v. *People,* 28 Mich. 213; and with his later opinion in *People* v. *Saunders,* 29 Mich. 269, wherein he said:

"It is true that no one can be convicted upon evil repute, without proof of actual misconduct. Persons and houses may bear an ill name, and yet there may be nothing known against them which would justify the interference of the law, and the respondent could not be lawfully convicted on such testimony, without evidence of some act which comes within the statute.

"There is some conflict of opinion on this point, but the decided weight of authority is to the effect that the general reputation of a house of itself, alone and uncorroborated, is insufficient to prove that it is disorderly." 9 R. C. L. p. 225, citing many cases.

The last question raised by the assignments of error goes to the admissibility in evidence of two typewritten papers found on the person of the witness Sominski nearly a month before the trial. Sominski was a willing witness for the prosecution. He testified these statements (Exhibits 1 and 2), were a summary of the things he wrote down about conditions in Hamtramck. He had been a witness before the grand jury then in session, and the grand jury was inquiring into alleged vice conditions in Hamtramck. Both exhibits were offered by the prosecution and received in evidence but only a part of Exhibit 2 seems to have been read to the jury. Among other things it was stated in the portion thus read that it was a recital of "facts" and information about wholesale corruption and graft in

Hamtramck, that the Hamtramck police department records would "prove" there were 14 houses of prostitution in that city harboring 125 prostitutes; that these houses were run "wide open without fear of the law, paying out money to officials." The ground of admissibility upon which the trial judge admitted Exhibits 1 and 2 is thus stated by him:

"It strikes me that on this Exhibit 2, that ought to be * * * read to the jury as a basis upon which the grand jury formed the action of inquiry so that the court can instruct the jury at least and be able to make a reference, intelligent reference, to the issue involved."

The jurors were not instructed as to any particular application or limited use to be made of this testimony. It went to them as general substantive proof. We think this was the effect of its admission, notwithstanding the trial judge permitted the portion of Exhibit 2 to be read "as a matter which came before the grand jury for inquiry." The defendant was charged with having committed perjury in testifying "that he * * * never knew a prostitute in Hamtramck; * * * that he did not know that there was a house * * * of prostitution in said city of Hamtramck." The inadmissibility of the portion of Exhibit 2 read to the jury is obvious. Under the record in this case it was not competent proof of any issue for the jury's determination. It was prejudicial and its receipt in evidence reversible error. This prejudicial error was not alleviated, as is now claimed by the prosecution, by the fact that defendant's counsel had an opportunity to cross-examine Sominski. The safeguard against the injustice and prejudice of receiving hearsay testimony, which the law affords every person accused of crime, cannot be thus frittered away.

For reasons hereinbefore indicated, the judgment of the circuit court is reversed, and a new trial ordered.

BUTZEL, C. J., and WIEST, CLARK, MCDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.