## LAYLE *v.* ADJUTANT GENERAL OF MICHIGAN

1. MILITIA—QUARTERMASTER GENERAL—RANK, TITLE—STATUTES—CONSTRUCTION.

    An act providing that the Quartermaster General of the national guard shall have the rank and title of brigadier general during his office tenure and upon his retirement was not self-executing and, upon its passage, did not automatically promote the incumbent quartermaster, a colonel, to brigadier general; however, that act did not evidence any legislative intention to force the removal of that incumbent quartermaster merely because he was not a brigadier general (PA 1957, No 214).

2. MILITIA—QUARTERMASTER GENERAL—STATUTES—SAVINGS CLAUSE—ABSENCE—INTENT.

    Absence of a savings clause in an act relating to the rank and title of the quartermaster of the national guard to the effect that there was no intention to terminate or otherwise affect any prior appointments to that office did not, *per se,* manifest an opposite legislative intent, *i.e.,* that prior quartermaster appointments should be terminated or affected (PA 1957, No 214).

___

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 6, 9] 36 Am Jur, Military §§ 43, 44, 52.
[2] 50 Am Jur, Statutes §§ 527, 573.
[4] 36 Am Jur, Military §§ 87–109.
[6] 35 Am Jur, Mandamus § 137.
[7] 34 Am Jur, Limitation of Actions § 17.
[8] 35 Am Jur, Mandamus § 388.

3. MILITIA—QUARTERMASTER GENERAL—STATUTES—VACANCY.

An act providing that the Quartermaster General of the national guard shall have the rank and title of brigadier general during his office tenure and upon his retirement did not automatically create a vacancy in that office upon its effective date although it so modified the office of Quartermaster General as to necessitate some affirmative act by the governor to facilitate its implementation (PA 1956, No 214).

4. MILITIA—MILITARY JUSTICE—STATUTES—APPLICATION.

Statute providing a uniform code of military justice for the national guard, not in service of the United States, applies to all persons belonging to the organized militia (PA 1957, No 297).

5. MILITIA—QUARTERMASTER GENERAL—RANK, TITLE—STATUTES—APPLICATION.

Governor's refusal to promote plaintiff-colonel, incumbent national guard quartermaster, to brigadier general and the governor's subsequent removal of plaintiff from that office, was improper where an act providing that the Quartermaster General shall have the rank of brigadier general did not evidence an intention that an incumbent quartermaster should be removed because he was not a brigadier general and another act, in effect when plaintiff was removed, provided that national guard staff officers should hold their positions until they reached retirement age, resigned, became disabled or were retired by court martial for cause (PA 1957, No 214; CL 1948, § 32.12).

6. MILITIA — QUARTERMASTER GENERAL — REMOVAL — MANDAMUS — DENIAL — LACHES.

Plaintiff-colonel's action regarding his improper removal from the office of Quartermaster General in 1957 was not barred by laches where plaintiff originally sought relief in 1958 by petitioning the Supreme Court for a writ of mandamus and that court had denied his petition without specifying any grounds and without holding a hearing on the merits.

7. LIMITATION OF ACTIONS—STATE RIGHT.

The right of the state to limit a plaintiff's recovery to amounts that accrued within six years of the commencement of an action is a substantial one and must be protected (MCLA § 600.5813).

8. Mandamus—Denial—No Hearing—Judgment—Res Judicata.
   Denial of a petition for a writ of mandamus without a hearing on its merits and without stating any grounds for its denial is not *res judicata*.

9. Militia—Quartermaster General—Wrongful Transfer—Damages.
   Wrongful transfer of plaintiff, a National Guard colonel, from the office of Quartermaster General to a position which did not require active full-time service, thus causing a reduction in his wages, entitled plaintiff to damages for loss of wages and adjusted retirement benefits.

Original action for writ of mandamus by Herbert F. Layle against Major General Clarence C. Schnipke, Adjutant General of Michigan, to find plaintiff to 'have been the Quartermaster General from June 6, 1957 to November 15, 1963, and for other relief relating to his proper military rank, title, actual duty and retirement pay. Submitted Division 2 March 6, 1969, at Lansing. (Docket No. 5,664.) Judgment for plaintiff. Decided February 3, 1970. Leave to appeal granted July 27, 1970. 383 Mich 809.

*Bartlett E. Nutter,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stuart H. Freeman,* Assistant Attorney General, for defendant.

Before: J. H. Gillis, P. J., and Levin and Bronson, JJ.

Bronson, J. On April 28, 1948, plaintiff Herbert F. Layle was appointed Quartermaster General of the State of Michigan. He served in that office until he was relieved of his position by order of the Honorable G. Mennen Williams, then Governor of

Michigan and Commander-in-Chief of the state military forces.

Plaintiff sought reinstatement to his former position of Quartermaster General and this was denied. He then filed a petition for relief by mandamus in the Supreme Court of Michigan, which was denied. On January 8, 1968, *McDonald* v. *Schnipke* (1968), 380 Mich 14, was decided. After that decision, plaintiff commenced this action.

On June 6, 1957, the Michigan legislature enacted PA 1957, No 214, which act was to take immediate effect. Act No 214 provides, in part, that "the quartermaster general shall have the rank and title of brigadier general during his tenure of office and upon retirement therefrom." On June 6, 1957, plaintiff held the rank of colonel and the office of Quartermaster General.

CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604) as then effective provided that:

"Upon occurrence of a vacancy in any office in the * * * quartermaster corps * * * , said offices shall be filled by the governor from among a list of officers of the Michigan national guard, recommended upon their merits and under proper regulations, for these respective offices by the state military board."

On September 23, 1957 the Attorney General advised the Governor that (1) Act 214 was not self-executing but was mandatory, (2) he was not obliged to promote Colonel Layle to brigadier general but that, if he did not do so, he must remove Layle as Quartermaster General and appoint someone else Quartermaster General with the rank of brigadier general, and (3) if he decided to remove Layle as Quartermaster General, that position would thereupon become vacant.

The report from the Attorney General upon which the Governor relied stated in part that:

"The position of quartermaster general as such remains the same as before the passage of this 1957 act. The change brought about is an increase in the rank or grade of the existing position and not the creation of a new position.

"* * * In view of your constitutional designation as commander-in-chief and of the powers necessarily vested in you by virtue of this office it is my considered judgment that the action of the legislature is not a self-executing promotion in rank of the incumbent quartermaster general but that the right and power of promotion in rank is imposed in you as commander-in-chief."

At a special meeting of the State Military Board held on September 24, 1957, in the Governor's office at Lansing, the Governor informed the board that, after due consideration of the recent changes in the military laws, he felt that there must be a new appointment made to the post of Quartermaster General. He informed the board that since PA 1957, No 214, required that "the quartermaster general shall have the rank and title of brigadier general", and inasmuch as the incumbent Quartermaster General was a colonel, it was his intention to appoint a new Quartermaster General. With this end in mind, the Governor requested the board to present a recommended list of those officers eligible for promotion to the rank of brigadier general.

According to the minutes of the special meeting of the State Military Board, held on September 24, 1957:

"The Governor further stated that inasmuch as CL 1948, § 32.12, required him to fill vacancies in the quartermaster general corps from among a list of officers of the Michigan National Guard, recom-

mended upon their merits and under proper regulations * * * by the State Military Board, *that he proposed to relieve the present Quartermaster General, effective midnight, 30 September 1957,* and directed the Military Board to furnish him, not later than 1 October 1957, a list of qualified officers of the Michigan National Guard who might be considered for appointment as the Quartermaster General of Michigan and for promotion to the grade of brigadier general." (Emphasis added.)

On September 25, 1957, Governor Williams sent a letter to Major General Gordon A. MacDonald, Presiding Officer of the State Military Board, which stated:

"PA 1957, No 214 requires the Quartermaster General of the State of Michigan to hold the rank of brigadier general. The incumbent quartermaster is a colonel. It is my desire to secure the recommendations of the Military Board with respect to officers eligible for promotion to the rank of brigadier general, the person ultimately selected by me thereafter to become the quartermaster general.

"CL 1948, § 32.12, requires me to fill vacancies in the quartermaster corps 'from among a list of officers of the Michigan National Guard, recommended upon their merits and under proper regulations * * * by the State Military Board.' *In order to initiate the recommendation process I have relieved Colonel Herbert F. Layle as the Quartermaster General effective midnight, September 30, 1957.*

"By this letter I wish to advise that the Military Board will be directed on October 1, 1957 to furnish me that day a list containing the names of officers of the Michigan National Guard considered by the board to be qualified for appointment to fill the vacancy existing on that date in the office of the Quartermaster General." (Emphasis added.)

On September 28, 1957, the then Adjutant General, in conformance with a written directive from the

Governor, issued Special Order No 204, relieving plaintiff from duty and assignment as Quartermaster General of the State of Michigan, said order taking effect as of 12 midnight, September 30, 1957. The order further provided that plaintiff was to continue in his assignment to Headquarters and Headquarters Detachment, Michigan National Guard.

On October 1, 1957, the State Military Board met and compiled a list of those officers who were eligible and desirous of the promotion. Plaintiff's name was among those certified eligible. On October 1, 1957, the Governor informed defendant and General Gordon MacDonald that it was his intention to appoint Colonel Ronald C. McDonald as Quartermaster General of the State of Michigan, such appointment to be effective October 1, 1957.

On April 2, 1958, plaintiff filed a petition for relief by mandamus in the Michigan Supreme Court. On July 17, 1958, the Michigan Supreme Court denied plaintiff's petition. At the time plaintiff sought relief by mandamus in the Michigan Supreme Court he was still an active member of the Michigan National Guard.

On May 20, 1968, plaintiff instituted the present action. Plaintiff here seeks judgment of the court:

1. Finding plaintiff to have been the lawful and rightful Quartermaster General with the office, military rank and title of brigadier general on June 6, 1957, and to have been entitled to discharge the duties of that position therefrom, until he reached age 64 on November 15, 1963.

2. Ordering defendant to restore plaintiff to the rank and title of brigadier general retroactive to June 6, 1957.

3. Ordering payment of full actual duty pay and allowances of the rank of brigadier general from June 6, 1957 to November 15, 1963, the date plaintiff became 64 years of age, less the actual duty pay and

retirement pay paid plaintiff by the State of Michigan during that period.

4. Ordering retirement of plaintiff under the provisions of CL 1948, § 32.49, retroactive to November 16, 1963, with the retirement pay of a brigadier general with 30 years of service as of that date, less such retirement pay paid to the plaintiff by the State of Michigan since that date.

We agree with the Attorney General that PA 1957, No 214 was not self-executing and, accordingly, that Layle was not automatically promoted to brigadier general upon its passage. The act does not, however, evidence any intention of the legislature to force the removal of the incumbent because he was not a brigadier general.

If a savings clause had been inserted into PA 1957, No 214 stating, in effect, that the amendment was not intended to terminate or otherwise affect any prior appointments, this would have been a clear manifestation of the legislators' intent;[1] however,

---

[1] For example, CL 1948, § 32.11 (Stat Ann 1961 Rev § 4.603) provided, in part:
"* * * Provided, That no officer shall be appointed in any such staff corps or staff departments with rank higher than colonel. * * * The Adjutant General's Department shall include the adjutant general of the state with rank of colonel, who shall also be inspector general of the state. The quartermaster corps shall include the quartermaster general of the state. The adjutant general and the quartermaster general shall be at the head of their various departments. * * * Nothing in this amendment shall be held or so construed as to discharge any officer from any of the various staff corps or staff departments, or to deprive any officer of the commission which he now holds."

It is also interesting to note that PA 1943, No 65, which raised the rank of the adjutant general to brigadier general, contained a savings clause (§ 2) which provided:

"The provisions of this amending act *shall not be construed to terminate any appointment* heretofore made to any military office * * * in the military establishment of this state, * * * nor to nullify any act heretofore made by or by authority of the governor with relation to the organization, administration or use of the Michigan State Troops, or the Michigan National Guard, or of the officers respectively thereof; and *all appointments to office* and all enlistments in the military establishment, *shall remain effective* according to the original tenor thereof." (Emphasis supplied.)

the absence of such a savings clause does not, *per se,* manifest an opposite intent. In concluding that PA 1957, No 214 does not evidence an intention to remove the incumbent Quartermaster General because he was not a brigadier general, we are influenced by the fact that CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604)[2] provided that staff officers shall hold their positions until they reach retirement age, resign, become disabled or are retired by court-martial for cause.

It is defendant's position that as of June 6, 1957, the effective date of PA 1957, No 214, a vacancy existed in the office of Quartermaster General. In support of this contention defendant cites the following language from *Baxter* v. *Latimer* (1898), 116 Mich 356, 364:

> "An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which appertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally-qualified incumbent who has a lawful right to continue therein until the happening of some future event. *  *  *  *  " (Citations omitted.)

To accept defendant's interpretation of *Baxter* would create the anomalous situation that PA 1957, No 214 automatically stripped plaintiff of the tenure

---

[2] CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604) reads, where pertinent:

"Staff officers, *  *  * hereafter appointed, shall have had previous military experience and *shall hold their positions until they shall have reached the age of 64 years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court-martial legally convened for that purpose,* and vacancies among said officers shall be filled by appointment from the officers of the militia of Michigan. Upon occurrence of a vacancy in any office in the *  *  * quartermaster corps *  *  *, said offices shall be filled by the governor from among a list of officers of the Michigan National Guard, recommended *  *  * by the State Military Board. (Emphasis supplied.)

provided him by CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604). This contention of the defendant is inconsistent with the position of the Attorney General set forth in his letter of September 23, 1957 wherein he stated that the position of Quartermaster General would become vacant upon Layle's removal and is also inconsistent with the action of the Governor, who did not rely on automatic removal under PA 1957, No 214 but, rather, attempted to remove Layle by order effective September 30, 1957.

In light of the provisions of CL 1948, § 32.12 (Stat Ann 1961 Rev § 4.604), we feel that the better interpretation of the above-quoted language from *Baxter* construes the time when the office-holder is to be determined qualified as the precise moment when he is appointed. Under our interpretation, PA 1957, No 214 did not automatically create a vacancy in the position of Quartermaster General upon its effective date.

We are faced with a situation in which the legislature by and through PA 1957, No 214 so modified the office of Quartermaster General as to necessitate some affirmative act by the Governor to facilitate the implementation of the act. When the Governor refused to raise the incumbent to the rank of brigadier general, the inadequate provisions of PA 1957, No 214 left the plaintiff in limbo.

PA 1957, No 297, being:

"An act to provide a uniform code of military justice for the Michigan National Guard, not in the service of the United States, and for the Michigan State Troops, when the same shall be in existence, and to repeal acts and parts of acts,"

was approved on June 19, 1957. Since this act was not immediately effective, it became effective on September 27, 1957.[3] Thus this act was in force

---

[3] See Public Acts 1957, p 635.

some three days before the date on which the Governor's action in relieving the plaintiff from the position of Quartermaster General became effective. In *McDonald* v. *Schnipke* (1968), 380 Mich 14, 21, the Michigan Supreme Court held that PA 1957, No 297 applies to all persons belonging to the organized militia and that the Governor violated that act in attempting to remove McDonald as Adjutant General pursuant to the Governor's powers under art 5, § 10 of the Constitution of 1963 rather than under and pursuant to the provisions of PA 1957, No 297.

It is now some 12 years since plaintiff was relieved as Quartermaster General. In these intervening years plaintiff faithfully performed his assigned duties until he was relieved from active duty and ultimately retired at the age of 60 with the pay of a colonel with 28 years' service.

The defendant asserts the plaintiff is barred from bringing his suit by laches and statute of limitations. In support of this claim, defendant points out the present suit was instituted over ten years after the plaintiff's removal and, quoting from *Arant* v. *Lane* (1919), 249 US 367 (39 S Ct 293, 63 L Ed 650), approved by *Jones* v. *Doonan* (1933), 265 Mich 384, 388, states the plaintiff, "having sat idly by for almost a decade," cannot now present any claims for relief.

This argument lacks merit. The plaintiff did not sit "idly by", as the defendant suggests; on the contrary, the plaintiff commenced suit originally by filing a petition with the Supreme Court in 1958. The plaintiff cannot be faulted because he did not obtain the hearing he sought when he filed his earlier petition. However, as to the statute of limitations defense, we take a somewhat different view. While the plaintiff did not permit the statute of limitations to expire without taking action, the present proceed-

ing was not commenced until May 20, 1968. To allow the plaintiff to recover without regard to the statute of limitations would impose too great a liability; the right of the state to limit the plaintiff's recovery to amounts that accrued within six years of the commencement of this action[4] is a substantial one and must be protected.

The defendant also submits this claim is barred on a theory of *res judicata*. That theory cannot be sustained as the original case was not decided upon its merits; on the contrary, the Supreme Court on July 17, 1958, merely denied plaintiff's petition for relief without stating any grounds for its denial. In all events, the decision of the Supreme Court was not made after a hearing on the merits.

We find that plaintiff did, indeed, suffer an actionable wrong. While plaintiff was not entitled to be promoted as a matter of right, his transfer to a position which did not require active, full-time service caused a reduction in wages from that which he received as a full-time Quartermaster General. Therefore it is our decision that plaintiff is entitled to damages equal in amount to his loss of wages which resulted from his transfer; such lost wages to be computed from May 20, 1962, the date six years before the date this suit was commenced, until such date as plaintiff shall have reached the age of 64 years. It is our further decision that plaintiff shall receive in damages such sum as is equal to the difference between the retirement pay he received from age 64 years until this date as computed on a basis of retirement at 60 years and the amount that he should have received had the retirement pay been computed on the basis of a colonel with the added four years of service. Finally, it is our decision that from this date hence plaintiff be given

---

[4] MCLA § 600.5813, Stat Ann 1962 Rev § 27A.5813.

retirement benefits computed as if he had served as a full-time colonel in the position of Quartermaster General until he reached the age of 64 years.

No costs, a public question being involved.

All concurred.