*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PETER ARMSTRONG, SR., SUSAN HOEKEMA, and JASON HUNTER,

        Plaintiffs-Appellants,

and

JEFFREY PADNOS,

        Plaintiff,

v

OTTAWA COUNTY BOARD OF COMMISSIONERS,

        Defendant-Appellee.

FOR PUBLICATION
January 25, 2024
9:25 a.m.

No. 366906
Ottawa Circuit Court
LC No. 23-007207-CZ

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

RIORDAN, J.

Plaintiffs Peter Armstrong, Sr., Susan Hoekema, and Jason Hunter appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(8) (failure to state a claim) in favor of defendant, the Ottawa County Board of Commissioners (the Commission). On appeal, plaintiffs contend that the trial court erred by granting summary disposition in favor of defendant on their claims alleging violations of the Open Meetings Act (OMA), MCL 15.261 *et seq.*, and of constitutionally protected speech. Further, plaintiffs argue that the trial court improperly dismissed their case without allowing them an opportunity to conduct discovery. For the reasons stated herein, we affirm the trial court's order.

# I. BASIC FACTS

In November 2022, eight of nine candidates endorsed by the "Ottawa Impact" (OI) were elected to the Commission.[1]  Additionally, prior to the election, incumbent Commissioner Kyle Terpstra announced his support for OI and remained on the Commission to be joined by the eight members-elect.  Plaintiffs gave these nine now-current members of the Commission the moniker the "Ottawa 9."  For ease of reference we will refer to them as such.

According to plaintiffs' complaint, in November and December 2022, after the OI-backed candidates were elected, but before they took the oath of office and were seated as members of the Commission in January 2023, the Ottawa 9 met in private, deliberated over public policy, made public-policy decisions to be implemented once they assumed office, and issued prospective orders to Ottawa County employees and agents about those decisions.  Plaintiffs further allege that after taking their oaths of office,[2] at a January 3, 2023 Commission meeting, the OI-backed commissioners implemented the decisions that they made before they statutorily assumed office.[3]  Subsequently, in their two-count complaint, plaintiffs claim that the actions of the Ottawa 9 in November and December 2022 violated the OMA, Count I, and provisions in the state constitution that protect freedom of speech and the right of citizens to instruct their representatives and to petition the government for the redress of grievances, Count II.  See Const 1963, art 1, §§ 3 and 5.

Defendant countered that the OMA did not apply to the Ottawa 9 before January 3, 2023, the date they assumed office, denied that they made any governmental decisions in November and December 2022, and denied that they had any authority to act on behalf of the Commission during that time.  Further, defendant argued, because the OI-backed commissioners-elect did not become government officials until they took their oaths and assumed office on January 3, 2023, their conduct in November and December 2022 could not give rise to constitutional violations.  Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10) (no genuine issue of material fact).  Plaintiffs argued in opposition to summary disposition, as they now do on appeal, that the OMA is a remedial statute that must be construed liberally to accomplish its intended effect of promoting transparency in local government and that recognizing the commissioners-elect as a de facto public body between November 8, 2022 and January 3, 2023, was necessary to prevent evasion of the OMA.

---

[1] The Ottawa Impact (OI) was founded by Joe Moss and Sylvia Rhodea in spring 2021.  According to plaintiffs' complaint, the OI "was originally built upon resistance and resentment to mask mandates during the COVID-19 pandemic, particularly those in schools."  In April 2022, the OI unveiled a slate of nine candidates for defendant, which is comprised of 11 members.

[2] Seven of the eight newly elected commissioners took the oath of office on January 3, 2023, but defendant explains that one newly elected commissioner took the oath of office on December 27, 2022, because he could not be present at the first meeting of the Commission.

[3] As explained *infra*, Const 1963, art 11, § 1 provides that all officers, before entering upon the duties of office, shall take the oath of office.  Under MCL 201.3(7), failure to do so renders the office "vacant."

After hearing oral argument, the trial court issued a written opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(8). Regarding Count I, the alleged OMA violations, the trial court observed that plaintiffs did not claim that the Ottawa 9 were a de jure public body empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise government authority. Rather, the trial court found, plaintiffs contended that the Ottawa 9 should be considered a public body because they exercised governmental authority that had been delegated to them. The trial court disagreed with plaintiffs' contention and ruled that the Commission lawfully holding office in November and December 2022 had not delegated any such authority to the Ottawa 9. The trial court acknowledged plaintiffs' argument that the OMA should be liberally construed to prevent evasion of the OMA and achieve the Act's purposes, but it declined to interpret the OMA in a way that would conflict with the plain language of the Act. The trial court commented that interpreting the OMA to apply to the Ottawa 9 as a de facto public body would effectively modify the statute, and the modification of statutes falls within the purview of the Legislature, not the courts. As to Count II, the trial court concluded that the Ottawa 9 were not government officials in November and December 2022, and therefore, their conduct during that time could not give rise to constitutional violations. For these reasons, without allowing any further discovery by plaintiffs, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8), and it declined to address defendant's motion under MCR 2.116(C)(10). Plaintiffs now appeal.

## II. ANALYSIS

### A. OPEN MEETINGS ACT

Plaintiffs first argue that the trial court erred by granting summary disposition in favor of defendant under MCR 2.116(C)(8) without allowing them the opportunity to conduct discovery. We disagree.

We review de novo a trial court's decision on a motion for summary disposition, as well as whether the trial court properly interpreted and applied relevant statutes. *Pinebrook Warren, LLC v City of Warren*, 343 Mich App 127, 139; 996 NW2d 754 (2022). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). In analyzing the claim, courts must accept as true all the factual allegations. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). Courts must construe the factual allegations in the light most favorable to the nonmoving party. See *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). This includes making all reasonable inferences or conclusions that can be drawn from the facts alleged in the nonmoving party's favor. *Gorman v Am Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotation marks and citation omitted).

"Our fundamental obligation when interpreting statutes is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Paige v City of Sterling Heights*, 476 Mich 495, 504; 720 NW2d 219 (2006) (quotation marks and citation omitted). "If the statute is unambiguous, judicial construction is neither required nor permitted." *Id*. (quotation marks and citation omitted). "Because the proper role of the judiciary is to interpret and not write

the law, courts simply lack authority to venture beyond the unambiguous text of a statute." *Id*. (cleaned up).

The OMA was enacted "to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the public may understand issues and decisions of public concern." *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 419; 925 NW2d 897 (2018) (quotation marks and citations omitted). The OMA applies to a "public body," which it defines, in relevant part, as "any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function." MCL 15.262(a). When a public body that itself is subject to the OMA delegates to a person or body its authority to act, the person or body so delegated also may be a public body for purposes of the OMA. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 225; 507 NW2d 422 (1993) (holding that a regent and subquorum groups tasked by the board of regents with selecting a new president for the university constituted public bodies under the OMA because the board of regents was a public body and had delegated its authority to the regent and subquorum groups). When a quorum of the public body is present, the OMA requires the public body to open its meetings to the public and to hold meetings in a place that is accessible to the general public, see MCL 15.263(1), to make its decisions at these public meetings, see MCL 15.263(2), and to conduct its deliberations in a meeting that is open to the public, MCL 15.263(3).

Const 1963, art 11, § 1 states that "[a]ll officers, legislative, executive and judicial, before entering upon the duties of their respective offices, shall take and subscribe" the oath of office.[4] "MCL 201.3(7) provides that failure to comply with this requirement renders the office vacant." *Davis v Emergency Manager for Detroit Pub Sch*, 491 Mich 899, 903 (2012) (YOUNG, C.J., *concurring*). Further, Const 1963, art 11, § 2 provides as follows:

> The terms of office of elective state officers, members of the legislature and justices and judges of courts of record shall begin at twelve o'clock noon on the first day of January next succeeding their election, except as otherwise provided in this constitution. *The terms of office of county officers shall begin on the first day of January next succeeding their election*, except as otherwise provided by law. [Emphasis added.]

Plaintiffs do not contend that the eight commissioners-elect, who had not yet started their respective terms of office under Const 1963, art 11, § 2, were authorized to exercise the powers of office before January 2023. That is, plaintiffs do not contend that the Ottawa 9 had the constitutional, statutory, or regulatory authority to exercise the powers of the county board of

---

[4] In *Tedrow v McNary*, 270 Mich 332, 334; 258 NW 868 (1935), our Supreme Court noted that Const 1908, art 16, § 2, the predecessor provision to Const 1963, art 11, § 1, applied to a county commissioner of schools. Thus, Const 1963, art 11, § 1 applies to county commissioners. See MCL 45.318 (stating that most county officers must "take and subscribe the oath of office prescribed by the constitution of this state").

-4-

commissioners before January 2023.[5]  See MCL 46.11.  To the contrary, our Supreme Court has long recognized that an office is occupied by an individual who is qualified "by the constitution or law" to "exercise the powers and perform the duties which appertain to it."  *Baxter v Latimer*, 116 Mich 356, 364; 74 NW 726 (1898).  Thus, there is no dispute that the Ottawa 9 did not satisfy the OMA definition of "public body" because the Ottawa 9 were not "empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function."  MCL 15.262(a).

Plaintiffs instead argue that the Ottawa 9 exercised governmental authority by delegation.  See *Booth*, 444 Mich at 225-226.[6]  Plaintiffs contend that the trial court's conclusion that there was no such delegation was premature because it ignored that the issue whether the Ottawa 9 had been delegated or vested with governmental authority during November and December 2022 was a factual question, not a legal question.

Assuming for the sake of argument that whether a public body subject to the OMA delegated to the Ottawa 9 the exercise of governmental authority is a fact question, plaintiffs did not allege such delegation in their complaint, nor have they suggested how further discovery would reveal facts that would establish that such delegation occurred.  Plaintiffs assert in their reply brief to this Court that they pleaded that governmental authority was delegated to the Ottawa 9.  They support this assertion by pointing to ¶¶ 23-44 of their complaint as examples of the Ottawa 9 "exercising delegated government authority."   Although these paragraphs recount various decisions and actions taken by the Ottawa 9, nowhere do they allege that the Ottawa 9 acted with delegated authority from a specific governmental body.  Theoretically, it is possible the then-sitting Commission as a public body subject to the OMA could have delegated authority to the Ottawa 9, thus rendering the Ottawa 9 a public body also subject to the OMA.  See *id*.  However, nowhere in their complaint do plaintiffs allege that the then-sitting Commission, nor any other public body, delegated any authority to the Ottawa 9.

Not only did plaintiffs fail to allege in their complaint that a public body subject to the OMA delegated the exercise of governmental authority to the Ottawa 9, they also failed to identify how additional factual development would establish that such delegation had occurred.  See *Maiden*, 461 Mich at 119.  Plaintiffs on appeal argue that discovery could reveal additional instances in which the Ottawa 9 had exercised governmental authority by making decisions outside of the public eye.  However, the accumulation of more examples of the Ottawa 9 deliberating and deciding without authority does not establish that the then-sitting commissioners delegated to them the exercise of governmental authority.  See *Davis v City of Detroit Fin Review Team*, 296 Mich

---

[5] One member of the Ottawa 9, Commissioner Kyle Terpstra, was an incumbent and therefore already had the powers of an individual county commissioner.  However, "[a]s used in the OMA, the term 'public *body*' connotes a collective entity."  *Herald Co v City of Bay City*, 463 Mich 111, 129; 614 NW2d 873 (2000).  Consequently, Commissioner Kyle Terpstra was not, by himself, a public body subject to OMA.

[6] Plaintiffs also incidentally suggest that the Ottawa 9 usurped governmental authority.  However, because plaintiffs do not develop this argument, we will not address it.  See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).

App 568, 594; 821 NW2d 896 (2012) (noting that whether a body is a governing body within the meaning of MCL 15.262(a) does not depend on the actual exercise of power—it depends on the power delegated to the body).

Thus, because plaintiffs failed to plead that a public body subject to the OMA delegated the exercise of governmental or proprietary authority to the Ottawa 9, and because the discovery they propose could not establish that such delegation occurred, the trial court did not err by concluding that the OMA did not apply to the Ottawa 9 before they assumed office because they did not meet the OMA's definition of a public body.

Plaintiffs further contend that the trial court erred by interpreting the OMA too strictly and that the trial court should have construed the OMA liberally to achieve the Legislature's remedial purpose of promoting transparency in local government. See *Vermilya*, 325 Mich App at 419 (indicating that this Court may interpret the OMA broadly to further the OMA's purposes). Specifically, they argue that the trial court should have declared that the Ottawa 9 constituted a de facto public body between November 8, 2022 and January 3, 2023. Plaintiffs provide no on-point, legal authority justifying or supporting this course of action. Instead, they contend that the lack of legal authority is attributable to the novelty of their legal theory, and they urge us to look to caselaw from other contexts in which courts have recognized the principle of de facto public bodies. We have reviewed the cases upon which plaintiffs primarily rely and conclude that none of them support declaring that the Ottawa 9 were a de facto public body for purposes of the OMA.[7] More importantly, the principle that the OMA may be broadly interpreted cannot be used to supersede the plain language of the Act. See *id*. at 418-419.[8]

To summarize, we conclude that the trial court did not err by determining that the OMA did not apply to the Ottawa 9 before they were seated on January 3, 2023, because, up to that point, they did not constitute a public body for purposes of the OMA. Had the entire Ottawa 9 been sworn members of defendant in November and December 2022, they would have constituted a quorum of defendant and would have been subject to the OMA. However, eight of the Ottawa 9 only held the status of commissioner-elect. Absent a delegation of power, they were neither a governing body, see *Davis*, 296 Mich App at 594, nor a public body for purposes of the OMA, see

---

[7] For example, plaintiffs assert that *People v Kaplan*, 256 Mich 36; 239 NW 349 (1931), stands for the proposition that "if a body is acting as a public body by exercising government authority, it will be treated as a *de facto* public body regardless of the legal formalities." *Kaplan*, however, involved a grand jury continuing its duties into the subsequent term. Our Supreme Court concluded that when the grand jury did so, it constituted "a de facto grand jury." *Kaplan*, 256 Mich at 39 (quotation marks and citation omitted). At most, *Kaplan* stands for the proposition that a body may constitute a "de facto" body when it exercises preexisting powers beyond its statutory term. Because the Ottawa 9 had no preexisting powers, it cannot be a de facto public body pursuant to *Kaplan*.

[8] "The . . . problem with the remedial-statute rule is that identifying what a 'liberal construction' consists of is impossible—which means that it is an open invitation to engage in 'purposive' rather than textual interpretation, and generally to engage in judicial improvisation." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), pp. 365-366.

MCL 15.262(a); *Booth*, 444 Mich at 225.  Further, plaintiffs' proposed additional discovery would not establish that the then-sitting commissioners delegated the exercise of governmental authority to the Ottawa 9 in November and December 2022, nor have plaintiffs provided us with any reason to conclude that the trial court erred by not declaring the Ottawa 9 a de facto public body for purposes of the OMA.

## B.  CONSTITUTIONAL CLAIMS

Plaintiffs briefly argue that the trial court erred by dismissing their constitutional claims without allowing an opportunity for discovery.  The trial court dismissed those claims because it concluded that the Ottawa 9 were not governmental actors before January 3, 2023, and, therefore, as private actors their conduct could not violate the United States or the Michigan Constitutions.  See *Manhattan Community Access Corp v Halleck*, 587 US ___, ___; 139 S Ct 1921, 1926; 204 L Ed 2d 405 (2019) (indicating that constitutional protections constrain governmental actors and protect private actors); see also *Woodland v Mich Citizens Lobby*, 423 Mich 188, 208; 378 NW2d 337 (1985) (indicating that the "reach of individual rights afforded by the Michigan Constitution is limited to protection against the government").  Plaintiffs argue that if the Ottawa 9 were exercising governmental authority, then the citizens of Ottawa County had a constitutional right to know about and attempt to influence it.

As already discussed, the Ottawa 9 did not possess—and, therefore, could not exercise—governmental authority in November and December 2022.  Plaintiffs conceded as much in the trial court when they admitted that the Ottawa 9's orders were unenforceable and that there were no legal repercussions for not complying with their requests.  Plaintiffs also conceded in the trial court that the Ottawa 9 were private citizens before January 3, 2023, but they argued that the Ottawa 9 differed from other private citizens because they were poised to effectuate their decisions after they assumed office.  Thus, plaintiffs argued, private citizens may be considered state actors when they exercise a function "traditionally exclusively reserved to the State." *Halleck*, 587 US at ___; 139 S Ct at 1926 (quotation marks and citation omitted).  However, plaintiffs do not provide any support for their proposition which would allow us to conclude that, in November and December 2022, the Ottawa 9, as private citizens, exercised functions "traditionally exclusively reserved to the State."  See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (stating that appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims); see also *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.") (quotation marks and citation omitted).  Nor have plaintiffs suggested how facts revealed through discovery might establish that the Ottawa 9 were government actors in late 2022, or that they were exercising functions of public office holders.

Accordingly, the trial court did not err by granting summary disposition of plaintiff's constitutional claim in favor of defendant.

## III.  CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err by granting defendant's motion for summary disposition of plaintiffs' complaint without allowing an opportunity for discovery.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Kathleen A. Feeney